# Illinois Official Reports

## Appellate Court

---

### *Piester v. Escobar*, 2015 IL App (3d) 140457

---

| | |
|---|---|
| Appellate Court Caption | SEANTAE PIESTER, Petitioner-Appellee, v. SANJUANA ESCOBAR, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0457 |
| Filed | June 26, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 13-OP-281; the Hon. Michael R. Albert, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | SanJuana Escobar, of Prophetstown, appellant *pro se*.<br><br>No brief filed for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Carter and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioner Seantae Piester filed a petition seeking a stalking no contact order against respondent SanJuana Escobar. Attached to the petition was an addendum and several pages of "screen saves" of social media postings Escobar had written. Piester's petition was heard and the trial court entered a plenary stalking no contact order. We affirm.

¶ 2                                                    FACTS

¶ 3    In December 2013, petitioner Seantae Piester sought a stalking no contact order against respondent SanJuana Escobar. Piester asserted in the petition that Escobar was "considered armed and/or dangerous." Attached to the petition was an addendum in which Piester described Escobar's alleged stalking conduct. It set forth numerous examples, such as, on one occasion, Escobar watched Piester at her workplace from a public location across the street and recorded Piester's actions on her cellular phone. The police responded, but Escobar subsequently recorded Piester leaving her workplace. Piester thereafter required a coworker to walk her to her car because she feared for her safety.

¶ 4    The addendum also stated that Piester altered her lunch times because Escobar monitored her actions and that Escobar would show up near Piester's workplace at lunch time or closing time. Escobar would park closest to Piester's work building and play loud music for "lengths of time." Piester asserted she had pictures of Escobar's car outside Piester's residence. Piester alleged that she has been forced to alter her daily routines and traffic patterns to avoid Escobar. She stated she was afraid of Escobar's "unstable behavior," which she described as "erratic and scary." In addition, Piester claimed that Escobar has disrupted Piester's job and disturbed her daily life.

¶ 5    The addendum also includes information regarding Escobar's purported harassment on social media. The addendum sets out several specific examples of harassment on social media sites as well as Piester's unsuccessful attempts to block Escobar from accessing her online information. For example, according to Piester, if she would post that she was going to lunch at a specific site, Escobar would show up there too. Piester stated her motion detector lights go off at night and she is afraid that Escobar is outside her house. She has asked the neighbors to watch out for her. Finally, Piester described a threat Escobar made in 2011 and said she has not felt safe in Escobar's presence since then. Attached to the addendum were screen saves from social media demonstrating Escobar's postings.

¶ 6    On January 30, 2014, a hearing took place on Piester's petition. The record on appeal, however, does not include either a report of proceedings or a bystander's report. The trial court entered a plenary stalking no contact order, which remains valid until January 30, 2016. The order prohibits Escobar from threatening to commit or committing stalking directly or through a third party and from contacting Piester in any way and orders Escobar to stay 25 feet away from Piester, her home and her workplace. In addition, Escobar is prohibited from posting anything on social media concerning Piester, using audio when recording Piester, and entering any business or government agency where Piester is located.

¶ 7    In February, Escobar filed a *pro se* motion and accompanying affidavit seeking to vacate the stalking no contact order. Counsel filed an appearance for Escobar and an amended motion to reconsider and vacate the stalking no contact order. In the amended motion,

Escobar argued that she had sought and was denied a stalking no contact order in June 2014 in another Whiteside County case (No. 13-OP-96), her motion to reconsider the denial was pending, and mutual stalking no contact orders are prohibited. See 740 ILCS 21/85 (West 2012). Escobar also argued that the plenary stalking no contact order against her interfered with her ability to pick up her daughter from the father's home, where Piester also lived. The trial court modified the plenary order on May 1, 2014, specifying that Escobar could pick up her daughter at the home Piester shared with the child's father but Escobar had to remain in her vehicle. The trial court rejected Escobar's other arguments. Escobar appealed.

¶ 8                                                    ANALYSIS

¶ 9        The issue on appeal is whether the trial court erred when it entered a plenary stalking no contact order against Escobar. She argues that the pending motion to reconsider the denial of her petition for a stalking no contact order in Whiteside County case No. 13-OP-96 prevents the trial court from entering the stalking no contact order in this case; that the plenary order was not supported by the evidence; and that the plenary order violated Escobar's free speech rights.

¶ 10       We begin with whether the trial court erred when it issued the stalking no contact order. Escobar argues Piester's claims of stalking were not supported by sufficient evidence or witness testimony and that none of Piester's allegations in her petition were verified by a witness. Finally, Escobar argues Piester did not prove that Escobar knew her acts caused Piester to fear for her safety as required for a stalking no contact order to issue.

¶ 11       Under the Stalking No Contact Order Act (Act), a victim of stalking may seek a civil remedy requiring the stalker to stay away from him or her. 740 ILCS 21/5 (West 2012). " 'Stalking' means engaging in a course of conduct directed at a specific person, and [the stalker] knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety *** or suffer emotional distress." 740 ILCS 21/10 (West 2012). A course of conduct means two or more acts "including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person" and may include contact by electronic communications. 740 ILCS 21/10 (West 2012). " 'Contact' includes any contact with the victim, that is initiated or continued without the victim's consent, or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued," including being in the victim's physical presence or sight, approaching or confronting the victim, or appearing at the victim's workplace or residence. 740 ILCS 21/10 (West 2012).

¶ 12       A petitioner is required to prove stalking by a preponderance of the evidence. 740 ILCS 21/30 (West 2012); *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 10. A victim does not need to contact her stalker to inform him or her that the contact is unwanted. *McNally*, 2015 IL App (1st) 134048, ¶ 14. The stalker's contact must be nonconsensual. *McNally*, 2015 IL App (1st) 134048, ¶ 14. The focus is on whether the stalker's behavior would cause a reasonable person to be fearful for her safety or to suffer emotional distress. *McNally*, 2015 IL App (1st) 134048, ¶ 14. We will not reverse a trial court's decision to issue a stalking no contact order unless it is against the manifest weight of the evidence. *McNally*, 2015 IL App (1st) 134048, ¶ 12.

¶ 13    As an initial matter, Escobar complains the report of proceedings does not support Piester's claims. Regardless of her complaint, Escobar failed to provide a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (appellant has burden to provide a complete record on appeal). There is no report of proceedings or bystander's report in the record. Accordingly, in the absence of a transcript of the hearing, we presume the trial court's determination had a factual basis and was in conformance with the law. *Foutch*, 99 Ill. 2d at 391-92. Moreover, we find that the record includes ample evidence sufficient to support Piester's request for the issuance of a stalking no contact order.

¶ 14    The addendum attached to Piester's petition establishes the trial court properly entered the stalking no contact order. Per the addendum, Escobar engaged in a course of conduct in which she followed, monitored, observed, surveilled, and threatened Piester. In addition, Escobar harassed Piester on social media and caused others to also post harassing and distressful comments. Piester set forth numerous examples of Escobar observing and recording her at her workplace and her home, harassing her on social media, and threatening her. Piester asserted that she has had to alter her schedules and routines to avoid Escobar and is fearful of what Piester describes as Escobar's "unstable," "erratic and scary" behavior. Piester has sought assistance from neighbors and coworkers so that she is protected from Escobar's conduct.

¶ 15    Contrary to Escobar's assertion that she was unaware her actions scared Piester, the parties have a history of confrontations, including attempts by both Escobar and Piester to obtain prior stalking no contact orders. In her petition, Piester maintained that she had told Escobar three years earlier to stop verbally harassing her and had called the police regarding Escobar's behavior on other occasions. The information set forth in Piester's complaint unequivocally establishes that Escobar knew or should have known that a reasonable person in Piester's position would be scared and threatened by Escobar's conduct of monitoring, surveilling, threatening and communicating to and about Piester over a several-year span. We find the evidence was sufficient to support the trial court's issuance of a stalking no contact order.

¶ 16    We next consider Escobar's challenge to the trial court's issuance of the plenary stalking no contact order based on a supposed pending motion to reconsider in another Whiteside County case where Escobar sought a stalking no contact order against Piester. Escobar is correct that mutual stalking no contact orders are prohibited. 740 ILCS 21/85 (West 2012). However, here, there are no mutual stalking no contact orders. The trial court docket sheet indicates that Escobar's petition filed in Whiteside County case No. 13-OP-96 was dismissed. There is no record of an outstanding motion to reconsider. We thus find Escobar's challenge to be without merit.

¶ 17    Lastly, we examine Escobar's free speech challenge. She argues that the stalking no contact order violates her right to freedom of speech.

¶ 18    A party's exercise of free speech is expressly excluded from the stalking statute and may provide a defense. 740 ILCS 21/10 (West 2012) ("[s]talking does not include an exercise of the right to free speech or assembly that is otherwise lawful"). The statute only prohibits speech that includes threats of violence or intimidation, which are not constitutionally protected. *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 20. Words concerning surveilling, interfering, or harassing a person are not entitled to protection as free speech. *McNally*, 2015 IL App (1st) 134048, ¶ 17. A case should be decided on nonconstitutional

grounds where possible. *In re E.H.*, 224 Ill. 2d 172, 178 (2006). We review the constitutionality of a statute *de novo*. *Nicholson*, 2013 IL App (3d) 110517, ¶ 11.

¶ 19      Escobar's social media postings and other online comments were part of a course of conduct of stalking. For example, screen saves attached to the addendums show Escobar monitoring Piester's daily activities and making degrading, threatening and harassing comments about her. This speech is not protected under the first amendment. Accordingly, Escobar's claim that her free speech rights were violated must fail and we need not consider her challenge to the constitutionality of the statute.

¶ 20      The judgment of the circuit court of Whiteside County is affirmed.

¶ 21      Affirmed.