**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200254-U

Order filed August 25, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| JODI TURNBOUGH, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Petitioner-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-20-0254 |
| | ) | Circuit No. 20-OP-752 |
| | ) | |
| ANGELA TREND, | ) | Honorable |
| | ) | Cory D. Lund, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Schmidt and Daugherity concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) Trial court's decision granting a stalking no contact order was contrary to the manifest weight of the evidence. (2) Respondent's request for sanctions is denied.

¶ 2    The trial court issued a two-year plenary stalking no contact order against respondent, Angela Trend. She appeals, arguing, *inter alia*, that the court's decision granting that order was contrary to the manifest weight of the evidence. We vacate the stalking no contact order.

¶ 3                                    I. BACKGROUND

¶ 4 Petitioner, Jodi Turnbough, filed a petition requesting an emergency stalking no contact order against Trend on May 11, 2020. Turnbough alleged that Trend had contacted her employer, the Lockport Police Department, as well as Lockport's city administrator, city attorney, and mayor, informing those parties that Trend was "involved in illegal business" and "committing a crime." Lisa Lovelace also filed a petition seeking an emergency stalking no contact order against Trend. The trial court denied Turnbough's request for an emergency order but granted Lovelace's. The court scheduled both causes for hearing on a plenary order.

¶ 5 At a May 26, 2020, hearing, counsel appeared on behalf of Lovelace. Trend did not appear in court. Counsel explained that Lovelace and Turnbough acted as supervisors during Trend's court-appointed visitation with her children. Counsel relayed that Trend had been abusive toward Lovelace, including yelling at her, driving past her house, and contacting various agencies accusing Lovelace of crimes. Counsel stated that "[i]t's the same kind of scenario, same kind of facts regarding Ms. Turnbough." The trial court found that Trend had defaulted by not appearing and granted two-year plenary stalking no contact orders for Turnbough and Lovelace.

¶ 6 Two days later, counsel appeared before the court requesting that the plenary orders be vacated because Trend had not been properly served. The court concurred, vacating those orders and issuing emergency orders in both cases.

¶ 7 On June 15, 2020, Trend appeared for a new hearing on the pending request for plenary stalking no contact orders. Counsel appeared representing Lovelace and once again described for the court the ways in which Trend "continue[d] to harass" Lovelace and Turnbough. Counsel added that both Lovelace and Turnbough were no longer participating in the supervised visitations with Trend. Trend denied all of counsel's allegations.

¶ 8    The court confirmed with counsel that there was no longer any type of relationship between Lovelace and Trend or between Turnbough and Trend, as the supervised visits had ended. The court then asked Trend: "[W]hat would be the harm in me entering an order that stopped you from harassing, annoying or talking to other people about Mrs. Lovelace?" Trend stated that "they have already somehow revoked my FOID," and added that such an order would cause her embarrassment.

¶ 9    Counsel asserted that Trend's FOID card had been revoked in an unrelated matter four months earlier. After looking the case up, the court noted that Trend had been charged with domestic battery and that the FOID card had likely been revoked upon the setting of bond in that case. The court added: "[T]his has nothing to do with that." The court then concluded:

> "[W]hat I'm going to do is I'm going to grant the plenary request for an order of no stalking. In balancing the equities, it certainly seems that there are denials from Ms. Trend about doing it but that there is no ongoing relationship which would necessitate or in any way cause additional contact."

¶ 10    With respect to Turnbough, counsel alleged that Trend had conducted a coordinated campaign to have Turnbough terminated from her job and that Trend had repeatedly driven past Turnbough's house. Trend denied those allegations, admitting only to filing Freedom of Information Act requests and inquiring into the operations of Lovelace's business, which employed Turnbough. The court replied:

> "[E]verything you're telling me does not justify you doing the things you are alleged to have done. I'm not saying you did do them, I'm not saying you didn't, but it's alleged against you. *** So I am kind of thinking that I have the same issues with the balancing of equities in this case [as] I did the last one in that in

3

the balancing of equities it hurts you little to have an order entered against you to not do the things you're alleged [*sic*], but it hurts Ms. Turnbough a lot if I \*\*\* allow you to keep doing the things you're alleged to have done."

The court ultimately granted two-year plenary stalking no contact orders in each case.

¶ 11                                      II. ANALYSIS

¶ 12        On appeal, Trend argues that the trial court's decision to grant the two-year plenary stalking no contact order requested by Turnbough[1] was contrary to the manifest weight of the evidence. Turnbough has declined to file an appellee's brief. In the absence of an appellee's brief, this court may reverse the ruling of the trial court where the appellant demonstrates reversible error supported by the record. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 13                              A. Stalking No Contact Order

¶ 14        Under the Stalking No Contact Order Act, a victim of stalking may commence civil proceedings seeking an order barring the stalker from making any further contact. 740 ILCS 21/5, 15 (West 2020). The trial court will issue a stalking no contact order where the petitioner proves by a preponderance of the evidence that the respondent engaged in conduct constituting stalking. *Id.* § 30; (West 2020); *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 10. A trial court's decision to grant a stalking no contact order will not be reversed on appeal unless that decision is contrary to the manifest weight of the evidence. *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 12.

---

[1]Trend is contesting the order granted with respect to Lovelace in a separate appeal currently pending before this court.

¶ 15     We find that the trial court's decision granting the two-year plenary stalking no contact order requested by Turnbough was contrary to the manifest weight of the evidence. Turnbough presented *no* competent evidence at the hearing on her petition. Rather, the only information provided to the court was conveyed by counsel for Lovelace in her explanation of the allegations. A "[p]etitioner must prove its case by competent evidence; unsworn statements of counsel or exhibits not in evidence are insufficient. *Department of Public Works & Buildings v. Neace*, 13 Ill. App. 3d 982, 985 (1973) (citing *Board of Trustees v. Lange*, 28 Ill. 2d 229, 231) (1963)); *Johnson v. Lynch*, 66 Ill. 2d 242, 246 (1977) (pleadings and arguments of counsel are not evidence). Trend explicitly denied those allegations, and neither Lovelace nor Turnbough actually testified.

¶ 16     Moreover, it should be noted that the court's comments upon granting the plenary orders tend to indicate that it did not consider the stalking allegations to have been proven by a preponderance of the evidence. The court emphasized to Trend: "I'm not saying you did do them, I'm not saying you didn't, but it's alleged against you." As it had done earlier with Lovelace's petition, the trial court based its decision not on whether Turnbough had sufficiently proven her stalking allegations, but on the impact the granting of the order might have on the parties. Rather explicitly, the court granted the order on the grounds that such an order would be of little harm to Trend, as she had no continuing reason to be in contact with Turnbough anyway. This was improper.

¶ 17 Because we find that the trial court's decision was contrary to the manifest weight of the evidence, we reverse that judgment and vacate the two-year plenary stalking no contact order issued against Trend.[2] See *Piester*, 2015 IL App (3d) 140457, ¶ 12.

¶ 18                                    B. Sanctions

¶ 19 Trend has filed a separate motion requesting that this court impose sanctions against Turnbough pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). Specifically, Trend seeks sanctions on the grounds that Turnbough failed to file an appellee's brief and that she had filed a frivolous and bad faith motion to dismiss the appeal. We have taken Trend's motion for sanctions with the case.

¶ 20 On November 12, 2020, appellate counsel—the same attorney who represented Lovelace below—filed her appearance on behalf of Turnbough. The next day, counsel filed a motion for an extension of time to file a brief. We allowed that motion, setting a due date of December 28, 2020, for the filing of Turnbough's brief. On December 24, 2020, Turnbough filed a motion to dismiss the appeal. In that motion, she argued that this court "is not in a position to grant the majority if not all of the relief herein requested by" Trend. Turnbough pointed out that in addition to seeking vacatur of the stalking no contact order, Trend had also requested reinstatement of her FOID card and the removal of Turnbough's counsel and her law firm for misconduct, from both this case and "any/all conflicting or connected cases." Following an

---

[2]We note that Trend includes in her prayer for relief a request that this court "[g]ive order for [Trend's] FOID reinstatement." Even assuming we have the authority to issue such an order under Illinois Supreme Court Rule 366(a)(5) (eff. Feb.1, 1994), the record here tends to show that the revocation of Trend's FOID card was unrelated to the instant case. See *supra* ¶¶ 8-9. We decline Trend's request for additional relief but note that she remains free to petition for reinstatement of her FOID card. See 430 ILCS 65/10(b) (West 2020).

objection from Trend, we denied that motion. Turnbough, as discussed above, did not subsequently file an appellee's brief.

¶ 21    Initially, we reject Trend's contention that Turnbough's decision to not file an appellee's brief amounts to a violation of appellate rules such that sanctions are appropriate. An appellee is under no legal obligation to file a brief. *E.g.*, *First Capitol Mortgage Corp.*, 63 Ill. 2d at 131-33. While Trend claims that the lack of an appellee's brief represents Turnbough's "attempt to slow-walk this appeal," the case was submitted and ripe for a disposition on the merits as soon as the due date for the appellee's brief lapsed. The decision to not file such a brief did not create any delay.

¶ 22    Trend also claims that Turnbough's motion to dismiss the appeal "was done in bad faith for the improper purposes of harassing Trend, delaying Trend's appeal, and increasing Trend's litigation cost." Trend additionally characterizes that motion as frivolous. Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) allows for the imposition of sanctions where any action pursued in the reviewing court was frivolous or brought in bad faith and for an improper purpose, such as "to cause unnecessary delay or needless increase in the cost of litigation[.]"

¶ 23    First, Turnbough's motion to dismiss the appeal was not brought for an improper purpose as contemplated by Rule 375(b). This court denied Turnbough's motion on the same day that Trend filed her objection, such that no significant delay was caused. While the two-page objection filed by Trend's counsel may have created some additional expense for her, there is no indication that such expense was the purpose of Turnbough's motion.

¶ 24    We also conclude that Turnbough's motion to dismiss the appeal was not frivolous, such that sanctions would be warranted. Turnbough's assertion that this court was "not in a position to grant the majority if not all of the relief herein requested by" Trend was at least partially correct.

7

As explained above, we are unable to grant order the reinstatement of Trend's FOID card, and we have no authority to remove Turnbough's counsel or law firm from unrelated cases, let alone do so based upon Trend's wholly unsupported charges of misconduct. Still, this court's authority to grant Trend's primary relief—vacatur of the stalking no contact order—rendered the motion to dismiss ultimately meritless. Even if that motion could be considered frivolous, "[t]he imposition of Rule 375 sanctions is left entirely to the discretion of the reviewing court," (*Stanila v. Joe*, 2020 IL App (1st) 191890, ¶ 26), and we would not find Turnbough's motion sanctionable.

¶ 25       Accordingly, we deny Trend's request for sanctions.

¶ 26                                III. CONCLUSION

¶ 27       The judgment of the circuit court of Will County is vacated.

¶ 28       Judgment vacated.