**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200253-U

Order filed September 17, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| LISA LOVELACE, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Petitioner-Appellee, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-20-0253 |
| | ) | Circuit No. 20-OP-751 |
| ANGELA TREND, | ) | |
| | ) | The Honorable |
| Respondent-Appellant. | ) | Cory D. Lund, |
| | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Presiding Justice McDade and Justice Lytton concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  In an appeal in a stalking no contact order case, the appellate court held that: (1) the trial court erred in granting the petitioner's request for a plenary stalking no contact order against respondent; and (2) respondent was not entitled to sanctions against petitioner on appeal.  The appellate court, therefore, vacated the trial court's plenary stalking no contact order and denied respondent's motion for sanctions.

¶ 2     Petitioner, Lisa Lovelace, filed an amended petition in the trial court for a stalking no contact order against respondent, Angela Trend.  After hearings, the trial court granted Lovelace's request on an emergency basis and then later entered a two-year plenary stalking no

contact order against Trend. Trend appeals and also moves for sanctions against Lovelace. We vacate the trial court's plenary stalking no contact order and deny Trend's motion for sanctions.

¶ 3                                                    I. BACKGROUND

¶ 4        Lovelace and her employee, Jodi Turnbough, worked as parent-child visitation supervisors in Will County, Illinois, through Lovelace's business. As part of their work in that regard, Lovelace and Turnbough had supervised some of the visits that had taken place with Trend's children in Trend's divorce case.

¶ 5        On May 11, 2020, Lovelace filed a verified petition in the trial court for an emergency stalking no contact order against Trend. The petition was amended shortly thereafter. In the verified amended petition, Lovelace alleged that Trend had sent an email to opposing counsel in Trend's divorce case and had indicated in that email that she had been driving by Lovelace's residence, that she had looked up information on Lovelace's husband and children, that she was watching Lovelace's house, and that she was aware of what was going on with Lovelace's visits with other people's children. Lovelace also alleged that she had seen Trend drive by her house on two different occasions in April 2020; that Trend had disclosed to Lovelace that she had audio recorded Lovelace during a visitation that Lovelace had supervised; and that Trend had sent correspondence to various governmental entities and/or officials containing misinformation about Lovelace and Turnbough, claiming that Lovelace and Turnbough were engaged in an illegal business and were conducting supervised visits without a court order. Lovelace's employee, Turnbough, also filed a verified petition for a stalking no contact order against Trend.

¶ 6        On the same date that the petitions were filed, the trial court held a hearing on each of the petitions. Lovelace was present in court for the hearing on her petition and represented herself. Trend was not present in court. The transcript from the court hearing has not been made a part of

2

the record in this appeal. The trial court's docket sheet, however, indicates that a witness was sworn and evidence was heard. At the conclusion of the hearing, the trial court granted Lovelace's petition and entered an emergency stalking no contact order against Trend. Among other things, the order prohibited Trend from harassing or stalking Lovelace, required that Trend stay at least 1000 feet away from Lovelace at all times, and barred Trend from going to Lovelace's home or place of employment. The trial court, however, denied Turnbough's petition for an emergency stalking no contact order without prejudice and set both cases for May 26, 2020, for a hearing to determine whether Lovelace's emergency order would be extended or plenary orders would be issued.

¶ 7        At the May 26 hearings, Lovelace was present in court and was represented by her attorney.[1] Trend was not present in court. Lovelace's attorney informed the trial court about the circumstances that had given rise to the filing of the petitions. Lovelace's attorney told the trial court that Lovelace and Turnbough had acted as supervisors during Trend's court-appointed visitation with her children, that Trend had been abusive toward and had yelled at Lovelace, that Trend had driven past Lovelace's house, and that Trend had contacted various agencies and accused Lovelace of committing crimes. Lovelace's attorney stated further that Trend had committed the same type of acts as to Turnbough. At the conclusion of the hearings, the trial court found that Trend had defaulted by not appearing in court and entered plenary stalking no contact orders for Lovelace and Turnbough and against Trend. The trial court set the case for a court hearing to take place a few days later for Trend to turn over her allegedly revoked Firearm Owners Identification (FOID) card.

---

[1] It is unclear from the record in the two cases whether the attorney represented both Lovelace and Turnbough or just Lovelace. For the purpose of simplicity, we have referred to the attorney here as Lovelace's attorney.

¶ 8        On the next court date, May 28, 2020, Lovelace was present in court and was represented by her attorney. Trend was not present in court. Lovelace's attorney informed the trial court that Trend had not been served and asked the trial court to vacate the plenary stalking no contact orders that had been issued in the two cases. The trial court agreed, vacated the plenary orders, issued emergency stalking no contact orders in both cases, and set the cases for June 15, 2020, for a hearing on the possible extension of the emergency orders or the issuance of plenary orders.

¶ 9        On the June 15 hearing date, Lovelace was present in court and was represented by her attorney. Trend was also present in court and represented herself in the proceedings. Although the trial court's docket sheet indicates that a witness was sworn and evidence was heard, no such proceedings can be found in the transcript of the hearing that was made part of the record in this appeal. When the trial court asked Lovelace's attorney why Lovelace wanted a plenary stalking no contact order against Trend, Lovelace's attorney responded that if Lovelace was called to testify, she would affirm all of the allegations stated in her petition. Lovelace's attorney went on to describe for the trial court the various allegations against Trend and the facts pertaining to those allegations. During her description, Lovelace's attorney told the trial court that Lovelace and Turnbough were no longer involved in supervised visitation with Trend. Lovelace's attorney stated further that the despite the court proceedings, Trend had continued to harass both Lovelace and Turnbough and described for the trial court the ways that Trend had done so.

¶ 10        When Trend was asked by the trial court about the allegations, she denied that she had committed any of the acts that Lovelace and Turnbough had alleged, although she acknowledged that she had pursued a Freedom of Information Act request as to certain matters. The trial court confirmed with Lovelace's attorney that the supervised visits had ended and that there was no longer any type of relationship between Lovelace and Trend or between Turnbough and Trend.

4

The trial court then asked Trend, "[W]hat would be the harm in me entering an order that stopped you from harassing, annoying or talking to other people about Mrs. Lovelace?" Trend responded, "they have already somehow revoked my FOID," and commented later in the proceedings that such an order would cause her embarrassment.

¶ 11 Lovelace's attorney told the trial court that Trend's FOID card had been revoked several months earlier in an unrelated case. After looking up the case and seeing that Trend had been charged with domestic battery, the trial court informed Trend that her FOID card likely had been revoked when the bond was set in the domestic battery case and that the current case had nothing to do with the prior domestic battery case.

¶ 12 Turning its focus back to the current case, the trial court stated:

> "[W]hat I'm going to do is I'm going to grant the plenary request for an order of no stalking. In balancing the equities, it certainly seems that there are denials from Ms. Trend about doing it but that there is no ongoing relationship which would necessitate or in any way cause additional contact."

The trial court, therefore, entered a two-year plenary stalking no contact order for Lovelace and against Trend.

¶ 13 With respect to Turnbough, Lovelace's attorney told the trial court that Trend had made several efforts to have Turnbough fired from her job and had repeatedly driven past Turnbough's home. Trend again denied that she had committed any of the acts alleged, other than filing FOIA requests and inquiring into the operations of Lovelace's business, which employed Turnbough. The trial court replied:

> "[E]verything you're telling me does not justify you doing the things you are alleged to have done. I'm not saying you did do them, I'm not saying you didn't,

5

but it's alleged against you. *** So I am kind of thinking that I have the same issues with the balancing of equities in this case [as] I did the last one in that in the balancing of equities it hurts you little to have an order entered against you to not do the things you're alleged [*sic*], but it hurts Ms. Turnbough a lot if I *** allow you to keep doing the things you're alleged to have done."

The trial court, therefore, entered a separate plenary stalking no contact order for Turnbough and against Trend.

¶ 14 Trend appealed in both cases. The two cases were not consolidated on appeal. Turnbough's appeal, therefore, was addressed in a separate case by this court (see *Turnbough v. Trend*, 2021 IL App (3d) 200254-U).

¶ 15 II. ANALYSIS

¶ 16 A. Stalking No Contact Order

¶ 17 On appeal in this case, Trend argues that the trial court erred in granting Lovelace's request for a plenary stalking no contact order against Trend. Trend asserts that the request should not have been granted because, among other things, Lovelace failed to present sufficient evidence to prove the allegations in the petition—that Trend had stalked Lovelace.

¶ 18 Lovelace has not filed a brief in this appeal. However, since the record in this case is simple and the error claimed by Trend can easily be decided without the aid of an appellee's brief, we will rule upon the merits of this case. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (stating that in appeals where the appellee has not filed a brief before the appellate court, the appellate court should still decide the merits of the appeal if the record is simple and the claimed errors are such that the appellate court can easily decide the errors without the aid of an appellee's brief).

¶ 19 The purpose of the Stalking No Contact Order Act (Act) is to give stalking victims the ability to seek a civil remedy in the trial court against the offending parties. See 740 ILCS 21/5, 15, 20, 80 (West 2020). Under the Act, a victim of stalking may file a civil petition in the trial court for a stalking no contact order requiring the offender respondent to stay away from the victim petitioner and any protected third parties. See 740 ILCS 21/5, 15, 20, 80 (West 2020); *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 11; *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 10. To obtain a plenary stalking no contact order, the petitioner must prove by a preponderance of the evidence that the respondent engaged in conduct that constituted stalking. 740 ILCS 21/30 (West 2020); *Piester*, 2015 IL App (3d) 140457, ¶ 12; *McNally*, 2015 IL App (1st) 134048, ¶ 10. "Stalking" is defined in the Act as "engaging in a course of conduct directed at a specific person" where the respondent "knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety *** or suffer emotional distress." 740 ILCS 21/10 (West 2020); *Piester*, 2015 IL App (3d) 140457, ¶ 11; *McNally*, 2015 IL App (1st) 134048, ¶ 10. A trial court's decision to issue a stalking no contact order will not be reversed on appeal unless it is against the manifest weight of the evidence. *Piester*, 2015 IL App (3d) 140457, ¶ 12; *McNally*, 2015 IL App (1st) 134048, ¶ 12. A finding is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the finding itself is unreasonable, arbitrary, or not based upon the evidence presented. *McNally*, 2015 IL App (1st) 134048, ¶ 12.

¶ 20 After reviewing the record in the present case, we find that the trial court erred when it granted Lovelace's request for a two-year plenary stalking no contact order against Trend. At the hearing on the plenary order, Lovelace presented no competent evidence to prove her allegations of stalking. Rather than present such evidence, Lovelace's attorney merely provided

the trial court with an oral summary of what her client would say had occurred. Lovelace and Turnbough did not testify, and the trial court did not question Lovelace or Turnbough directly. Trend specifically denied the allegations and was not given an opportunity to question Lovelace or Turnbough about what they had claimed had occurred. Based upon the lack of evidence presented, we must conclude that Lovelace failed to present sufficient evidence to prove her allegations of stalking and that the trial court's ruling to the contrary was against the manifest weight of the evidence. See *McNally*, 2015 IL App (1st) 134048, ¶ 12; *Department of Public Works & Buildings v. Neace*, 13 Ill. App. 3d 982, 985 (1973) (stating that a petitioner must prove its case by competent evidence and that unsworn statements of counsel or exhibits not in evidence are insufficient); *Johnson v. Lynch*, 66 Ill. 2d 242, 246 (1977) (indicating that pleadings and arguments of counsel are not evidence). We, therefore, reverse the trial court's judgment and vacate the two-year plenary stalking no contact order that the trial court issued for Lovelace and against Trend.[2]

¶ 21 In reaching that conclusion, we note that it appears from the record that the trial court incorrectly made its decision in this case based solely upon what it perceived to be the impact that granting or not granting the petition would have on the parties and did not consider whether Lovelace had proven her allegations by a preponderance of the evidence as the Act and the case law require (see *Piester*, 2015 IL App (3d) 140457, ¶ 12; *McNally*, 2015 IL App (1st) 134048, ¶ 10). Had the trial court done so, it would have likely realized that no competent evidence had been presented.

---

[2] In her prayer for relief, Trend also requests that we issue an order reinstating her FOID card. Even if we assume for argument's sake that we have the authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) to issue such an order, we decline to do so here because the record in this case indicates that Trend's FOID card was revoked based upon a prior domestic battery charge and not based upon the proceedings in this case. Trend remains free to petition for reinstatement of her FOID card if she believes that reinstatement is appropriate. See 430 ILCS 65/10(b) (West 2020).

8

¶ 22                                    B. Sanctions

¶ 23        As a final matter in this appeal, we must address Trend's motion for sanctions against

Lovelace.  Trend filed the motion during the course of the appeal, and we took the motion to be

decided with the case.  In the motion, Trend requested that sanctions be imposed against

Lovelace and Lovelace's attorney pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1,

1994) for failing to file an appellee's brief in violation of appellate rules and for filing a frivolous

and bad-faith motion to dismiss Trend's appeal.

¶ 24        To place this issue into context, some background information must be provided.

Lovelace's brief in this appeal (the appellee's brief) was initially due to be filed on November

23, 2020, but Lovelace sought, and was granted, an extension to December 28, 2020.  Four days

before the extended filing date, however, Lovelace filed a motion to dismiss Trend's appeal,

claiming that this court was "not in a position to grant the majority if not all of the relief ***

requested by [Trend]."  Lovelace pointed out in the motion that in addition to seeking to vacate

the stalking no contact order, Trend also sought as relief in her appeal to have her FOID card

reinstated and to have Lovelace's attorney (and the attorney's law firm) removed from this case

and all conflicted or connected cases for misconduct.  Trend filed a response and opposed the

motion to dismiss, and this court ultimately denied the motion on January 19, 2021.  Lovelace's

attorney did not ask this court to stay the briefing pending a ruling on the motion to dismiss and

did not subsequently file an appellee's brief in this case.

¶ 25        Supreme Court Rule 375, the rule relied upon by Trend here, allows the appellate court to

impose sanctions upon a party or a party's attorney for, among other things, willfully failing to

comply with the appellate rules or for filing an appeal or taking an action in the appellate court

that is frivolous or that is done in bad faith and for an improper purpose, such as to harass or to

9

cause unnecessary delay or needless increase in the cost of litigation. The decision of whether to impose sanctions upon a party under Rule 375 is left entirely to the discretion of the appellate court. *Fields v. Lake Hillcrest Corp.*, 335 Ill. App. 3d 457, 466 (2002).

¶ 26    After reviewing the record in the present case and considering our level of discretion in this matter, we deny Trend's request for Rule 375 sanctions against Lovelace and her attorney for two main reasons. First, contrary to Trend's implied assertion, an appellee has no legal obligation to file an appellate brief. See, *e.g.*, *First Capitol Mortgage Corp.*, 63 Ill. 2d at 130-33. Thus, Lovelace's decision to not file an appellee's brief here does not amount to a violation of appellate rules such that sanctions are appropriate. While Trend claims that the lack of an appellee's brief represents Lovelace's "attempt to slow-walk this appeal," the case was submitted and ripe for a disposition on the merits as soon as the due date for the appellee's brief lapsed. Lovelace's decision to not file an appellee's brief, therefore, did not create any delay.

¶ 27    Second, we do not agree with Trend's claim that Lovelace's motion to dismiss was frivolous and was filed in bad faith for the improper purposes of harassing Trend, delaying Trend's appeal, and increasing Trend's litigation cost. As Lovelace correctly recognized in the motion to dismiss, some or most of the relief that Trend was seeking arguably could not be granted by this court: we are unable to order the reinstatement of Trend's FOID card as noted above and have no authority to remove Lovelace's attorney or the attorney's law firm from unrelated cases, let alone do so based upon Trend's wholly unsupported allegation of misconduct. In addition, and despite Trend's claim to the contrary, there was no significant delay caused by the motion to dismiss since the motion was denied the same day that Trend's objection to the motion was filed. Finally, although there may have been some additional expense to Trend because of the need to respond to the motion to dismiss, there is no indication

10

that such expense was the purpose of Lovelace's motion.  In short, we cannot find, under the circumstances of this case, that Lovelace's motion to dismiss was frivolous or brought for an improper purpose as contemplated by Rule 375.  We, therefore, reject Trend's arguments on this issue and decline to impose sanctions upon Lovelace or Lovelace's attorney in this case.

¶ 28                              III. CONCLUSION

¶ 29          For the foregoing reasons, we vacate the judgment of the circuit court of Will County.

¶ 30          Judgment vacated.