2023 IL App (2d) 210784-U
No. 2-21-0784
Order filed May 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| CARSON JONES, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-OP-1961 |
| | ) | |
| TIMOTHY WILSON, | ) | Honorable |
| | ) | Reginald Mathews |
| | ) | and Jacquelyn D. Melius, |
| Respondent-Appellee. | ) | Judges, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   In petitioner's appeal from the denial of his petition for a plenary stalking-no-contact order, we reach the merits despite the deficiencies in petitioner's brief and hold that (1) the trial court properly continued to another date the evidentiary hearing on the petition, (2) the court did not err by requiring petitioner to serve respondent with a copy of the continuance order, (3) the evidence supported the denial of a plenary order, and (4) the court did not err in ruling on petitioner's motion to vacate the denial, despite respondent's absence at the motion hearing.

¶ 2    *Pro se* petitioner, Carson Jones, appeals a judgment denying his petition, under the Stalking No Contact Order Act (Act) (see 740 ILCS 21/1 *et seq.* (West 2020)), for a plenary stalking-no-contact order against respondent, Timothy Wilson.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On October 6, 2021, petitioner applied for an emergency stalking-no-contact order against respondent, alleging as follows. The parties lived in the same apartment building. On April 1, 2021, respondent "got in [petitioner's] face" and yelled that he had a gun and wanted to shoot petitioner. On October 5, 2021, petitioner knocked on the door of a bathroom that all residents shared; respondent yelled at him and threatened to hurt him. On October 6, 2021—the day petitioner applied for the stalking-no-contact order—petitioner "opened the screen door."[1] In response, respondent said that he would kill petitioner. Respondent then ran to his apartment, returned with what looked like a gun, and yelled at petitioner.

¶ 5      On October 6, 2021, the trial court entered an emergency stalking-no-contact order, effective through October 27, 2021, and set that date for a hearing on a plenary order.

¶ 6      On October 27, 2021, the trial court held a virtual hearing. Petitioner answered ready. Respondent said he was calling from a hospital where he had been admitted, but claimed he was still ready to proceed. He acknowledged that he had been served with the emergency order. Judge Mathews initially presided but turned the hearing over to Judge Melius. The court decided to postpone the hearing because defendant had several witnesses but was experiencing "connection issues" and was currently hospitalized. The court continued the hearing to November 18, 2021, and extended the emergency order to that date. The court's written order noted that respondent had been disconnected from the proceeding before it finalized the new hearing date. The order required petitioner to certify that he mailed the order to respondent.

---

[1]As the record elsewhere indicates, the screen door was one of the doors into the apartment building.

¶ 7      On November 8, 2021, petitioner filed a motion for clarification, inquiring why he was required to serve the October 27, 2021, order on respondent when he had served respondent with the initial emergency order.  On November 18, 2021, the trial court heard the case remotely.  Petitioner, per his motion, asked why he had to serve respondent with the October 27, 2021, order, given that he had already served respondent in the case.  The court confirmed with respondent that he was served with the October 6, 2021, stalking-no-contact order and was ready to proceed with the evidentiary hearing.  The hearing commenced, and the court conducted all the examinations.  We summarize the evidence.

¶ 8      Petitioner testified as follows.  He and respondent met in March or early April 2021.  They resided on the same floor of the apartment building.  On April 1, 2021, they were standing in a corridor about 15 to 20 feet apart; petitioner was about to enter his apartment and respondent was near the common bathroom.  Respondent spoke to petitioner about a mess someone else had made in the bathroom.  Respondent became "belligerent" and used "profound [*sic*] language towards [petitioner], which escalated into him saying that he had a gun."

¶ 9      After refreshing his memory by rereading his petition's account of the April 1, 2021, encounter, petitioner testified that respondent "started to tell [petitioner] that [petitioner] had done something to the bathroom."  Respondent then "said that he [was] going to f***ing get [petitioner]."  Respondent "started yelling many loud, abusive things."  As petitioner was closing his door, respondent said (as best petitioner could recall) that "he had a gun and that if [petitioner] wanted something, to come back into the hallway."

¶ 10      The court asked petitioner about the October 5, 2021, incident.  Petitioner played a video that he claimed depicted his encounter with respondent outside the building on the evening of October 5, 2021.  According to petitioner's narration of the video, respondent said he was going

to "kill this n*** tonight." Respondent then approached petitioner and "got in [his] face." Petitioner went inside the building. Respondent followed him inside and up the stairs, shouting in the hallway even after petitioner closed his apartment door.

¶ 11 We note that the only video in the record on appeal shows a sidewalk and a streetlight. It contains no audio except an unknown person saying, "on the f***ing ground, n***."

¶ 12 The court examined petitioner about the October 6, 2021, incident. Petitioner testified that respondent yelled at him for keeping the screen door open and said he would kill petitioner. Petitioner saw respondent grab something from his room.

¶ 13 Respondent testified as follows. Petitioner had repeatedly locked the door to the shared bathroom so that other people could not use it and had repeatedly left the building's screen door open. When respondent told him to stop doing these things, petitioner answered with obscenities. As a result, respondent tried to avoid petitioner.

¶ 14 Respondent testified that, on the evening of October 5, 2021, he was outside conversing with another resident when petitioner appeared and approached him. Respondent repeatedly told petitioner to leave him alone, but petitioner kept circling him, knowing that he was subject to panic attacks. Respondent attempted to introduce a video that he claimed showed petitioner stalking him, but he could not get the video to play.

¶ 15 Respondent called two witnesses: Jose Barraza and Dolly Voley. Barraza, a building resident, testified that, on October 5, 2021, he and respondent were outside conversing. Respondent had recently been released from the hospital and "wasn't in good condition." He was also emotionally distressed because his mother would be disconnected from life support. Petitioner came outside and stood "very close" to respondent. Respondent told him to leave him

alone. Petitioner walked a few feet away but then came back. Barraza left to get his phone to call the police if needed. However, when he came back a minute later, petitioner had left.

¶ 16     Voley, the building owner, testified that petitioner had been harassing respondent and other residents. For example, petitioner followed respondent and hid in the shared bathroom outside respondent's door. Petitioner had also locked the bathroom door, left the building doors open, and pressured residents for food and money. Currently, Voley was trying to evict him for nonpayment of rent.

¶ 17     Petitioner objected to the testimony of both Barraza and Voley as irrelevant to the issues he raised in his petition. The trial court overruled the objection but asked petitioner if he wanted to say anything else about Barraza's and Voley's testimony. Petitioner testified that the video he showed the court depicted what happened on the evening of October 5, 2021, after he left the building.

¶ 18     Petitioner then called Tiffany Greenwald. She testified that she was dating petitioner. She had visited his building numerous times, including when "there was some bathroom issue going on." Greenwald heard respondent "say something about a gun," but she "[did not] know what he said. [She] just heard the word gun." She was not there on the dates of the other incidents at issue. At times, respondent had been "pretty obnoxious" to her, but when the court asked her what he said, she testified, "I don't know. I just—you know, I'm like nope, nope. Something like trying to, I don't know, call [petitioner] out on things, like maybe—I don't know."

¶ 19     The parties rested. The court held that petitioner had not met his burden of proof. Even after refreshing his recollection with the petition, petitioner never said "what happened with the gun on April 1." This lapse caused the court "to question the voracity [sic] of his testimony to some degree." Further, although the video showed respondent using abusive language toward

petitioner, the remaining evidence placed the outbursts in context. Specifically, Barraza testified that, before petitioner started recording the encounter, respondent had come home from the hospital extremely upset because his mother was being taken off life support. Yet petitioner repeatedly antagonized him and then started filming after respondent started cursing. Moreover, Voley, an independent witness, testified that petitioner had repeatedly antagonized respondent and others. Finally, Greenwald was biased and remembered only that respondent said something about a gun.

¶ 20    Petitioner moved to reconsider the court's ruling. The trial court denied the motion at a remote hearing where respondent did not appear. Petitioner timely appealed.

¶ 21                                II. ANALYSIS

¶ 22    On appeal, petitioner attempts to raise a variety of issues. Respondent has not filed an appellee's brief, but we may nonetheless reach the merits of this relatively simple case. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 23    First, however, we must note that petitioner's brief does not adhere to certain rules for briefing. Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) requires an appellant's brief to contain a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Arguments based on nonrecord facts do not deserve consideration. See *Paluch v. United Parcel Service, Inc.*, 2014 IL App (1st) 130621, ¶ 23. Petitioner's statement of facts partly conforms to these rules but also contains numerous facts not supported by citations to the record and some that are not drawn from the record at all.

¶ 24    Further, Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires an appellant's brief to contain an "Argument" section, "which shall contain the contentions of the appellant and

the reasons therefore, with citations of the authorities and the pages of the record relied on." Points not argued are forfeited (*id.*) and arguments that are insufficiently developed are also forfeited (*Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991)). Respondent raises five one-paragraph arguments, but the sole citations to legal authority are two sections of the Act, with minimal argument based on them. There are *no* citations to case authority.[2]

¶ 25    A court of review is entitled to have the issues clearly defined with pertinent authority cited and is not a depository into which the appellant may dump the burden of argument and research. *Hall v. Naper Gold Hospitality*, LLC, 2012 IL App (2d) 111151, ¶ 13. Because petitioner's brief fails to comply with basic briefing rules, we would be within our prerogative to dismiss this appeal. See *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). However, as the issues are not difficult, we shall address the merits where we can discern cohesive arguments.

¶ 26    Petitioner contends first that, at the October 27, 2021, hearing, the trial court erred in continuing the cause even though both parties answered ready. A trial court has the discretion to order a continuance, and its decision will not be disturbed on appeal absent an abuse of discretion. *People v. Walker*, 232 Ill. 2d 113, 125 (2009). We cannot say that the trial court abused its discretion in affording the *pro se* respondent more time, as he had witnesses. Further, the court was rightfully concerned about his ability to proceed, given his medical condition.

¶ 27    Petitioner's second argument appears to be that the trial court abused its discretion in requiring that respondent be served with a copy of the October 27, 2021, continuance order, given

---

[2]The brief contains a separate section, "Statutes and Rules Involved," which lists numerous statutory and constitutional provisions, but the "Argument" section cites only two of these authorities.

that he had already been served with the emergency stalking-no-contact order. The defect in this reasoning is obvious. The court noted in the October 27, 2021, order that respondent was disconnected from the hearing before the court finalized the continued date. Serving the emergency order on respondent *before* the October 27 hearing did not give him notice of the continuance *ordered at* the October 27 hearing. Further, petitioner does not argue that the alleged error prejudiced him in any way.

¶ 28    Petitioner's third and fourth arguments essentially contend that the evidence did not support the judgment. Petitioner appears to argue that the video he played in court proved that respondent's acts met the statutory definition of "stalking," *i.e.*, respondent "engag[ed] in a course of conduct directed at a specific person [(petitioner)], and *** [knew] or should [have known] that this course of conduct would cause a reasonable person to fear for his *** safety" [3] (740 ILCS 21/10 (West 2020)). He also argues that the trial court erred in crediting respondent's "biased" witnesses.

¶ 29    Two principles dispose of these arguments. First, it is the appellant's burden to supply a record sufficient to support a claim of error, and any doubts arising from the record's incompleteness will be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Second, our review is deferential. Petitioner was required to prove his cause of action by a preponderance of the evidence. *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 12. On appeal, we will not reverse the judgment unless it is against the manifest weight of the evidence. *Id.* Under

---

[3]Petitioner also makes some assertions about where respondent and his witnesses were situated during the virtual evidentiary hearing. Aside from being unsupported by the record, these purported facts are of no importance to our review.

this standard, the fact finder (here, the trial court) had the prerogative to decide the credibility of the witnesses, the weight given their testimony, and the reasonable inferences to draw from the evidence. *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 118.

¶ 30    Given these constraints, we shall not disturb the judgment. Petitioner relies predominantly on the four-minute video he played in the trial court. However, we have only a shorter video with no people visible and approximately two seconds of recorded speech. We cannot base a reversal on evidence that petitioner failed to supply us. Further, it was for the trial court to evaluate whether—as petitioner asserts—respondent's witnesses were incredible because of their biases. The court found that they were credible. (Moreover, petitioner's witnesses (himself and his girlfriend) were clearly biased also.) The witnesses' testimony persuaded the court that petitioner had not proved his case, and we have no basis to overturn that conclusion.

¶ 31    Finally, petitioner contends that the trial court erred in denying his motion to vacate. Petitioner argues that it was improper for the court to rule on the motion without respondent present. Petitioner does not explain, and we cannot imagine, what prejudice he suffered from respondent's absence. Petitioner also contends that the court should have continued the hearing on his motion to vacate, but the record does not show that he ever requested a continuance. Therefore, we reject the contention.

¶ 32                                    III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

¶ 34    Affirmed.