2026 IL App (1st) 250746-U

No. 1-25-0746

Order filed May 8, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ASHLEY HUBER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 OP 73165 |
| | ) | |
| CHRISTOPHER POINTER, | ) | Honorable |
| | ) | Jonathan Clark Green |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where respondent-appellant did not provide a sufficiently complete record on appeal for review, judgment is affirmed.

¶ 2   Christopher Pointer, proceeding *pro se,* appeals from a plenary stalking no-contact order entered in favor of Ashley Huber. On appeal, Pointer challenges (i) the trial court's findings, (ii) the authentication and admission of evidence, and (iii) the award of attorney's fees. Because Pointer did not present a sufficiently complete record on appeal for review, we must affirm.

¶ 3                                    Background

¶ 4     The facts are derived from the limited record on appeal, which consists solely of the common law record.

¶ 5     On April 12, 2024, Huber filed a *pro se* petition for a stalking no-contact order against Pointer under the Stalking No-Contact Order Act (Act) (740 ILCS 21/1 *et seq.* (West 2022)). Huber alleged that on January 7, 2024, Pointer totaled her car by slashing tires, damaging the driver's side door, destroying the gas tank cap cover, removing the side mirrors, and pouring white paint over the car. About a month later, Pointer again slashed tires, keyed the word "hoe" on the driver's side door, and removed a side mirror. On April 4, Pointer was seen on Huber's Ring camera approaching her back porch holding unknown items. The court denied an emergency order and continued the case for a hearing.

¶ 6     In response, Pointer asserted that he and Huber were former coworkers who did not interact outside of work. He denied having contact with Huber since March 15, 2024, when Huber allegedly "maliciously contacted" him through a burner phone. Pointer further alleged that Huber misused her employment to obtain his email address and register him for websites, services, and newsletters. He also claimed she sent him text messages from other "burner" phone numbers. Pointer argued that the petition should be denied because (i) Huber was ineligible for protection under the Act, (ii) he had never been physically or verbally abusive, (iii) Huber never stated he made her feel unsafe, (iv) Huber misused her employment to contact him, and (v) other barriers prevented them from engaging with each other. Exhibits attached to Pointer's response included text messages, emails, and newsletters.

¶ 7    In a later response, Pointer moved to dismiss the petition and alleged additional instances in which Huber contacted him using burner phones or registered him for newsletters and services. He contended that Huber abused the legal process to surveil and harass him through phone and email, and she did not require an order of protection.

¶ 8    Huber retained counsel, who filed an amended petition. In an attachment, Huber alleged that she and Pointer had worked at a YMCA, and that, in July 2022, Pointer asked her on a date, which she declined. The following month, Huber left the YMCA to work at a different fitness club. Pointer later joined that fitness club and, in July 2023, texted to invite her to a birthday dinner, which she again declined. Between August 2023 and April 2024, Huber alleged that Pointer vandalized and damaged her car, sent unwanted text and social media messages, arrived uninvited at her residence, and vandalized her residence.

¶ 9    Pointer retained counsel. Thereafter, the court held a hearing and entered a plenary stalking no-contact order against Pointer, based on an oral ruling. The court continued the matter to address the issue of attorney's fees. Huber sought $21,540 in attorney's fees and costs, supported by an affidavit detailing the time expended, the hourly rate, and the attorney's experience.

¶ 10    Pointer moved for reconsideration of the plenary stalking no-contact order. The court denied the motion and awarded Huber $13,000 in fees and costs. Pointer then moved *pro se* to vacate the judgment. Because Pointer had an attorney of record, the court struck the motion.

¶ 11                                Analysis

¶ 12    On appeal, Pointer argues that the trial court erred by granting a plenary stalking no-contact order in favor of Huber because the evidence was insufficient to support a finding of stalking and the court's decision relied on inadmissible, unauthenticated exhibits.

¶ 13 To succeed under the Act, a petitioner must prove stalking by a preponderance of the evidence. *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 12. "The stalker's contact must be nonconsensual." *Id*. The Act does not require the victim to communicate with the stalker that the conduct is unwanted. *McNally v. Bredmann*, 2015 IL App (1st) 134048, ¶ 14. Rather, "[t]he Act merely requires that the stalker's contact be nonconsensual." *Id*. The Act focuses "on whether the stalker's behavior would cause a reasonable person to be fearful for [their] safety or to suffer emotional distress." *Piester*, 2015 IL App (3d) 140457, ¶ 12.

¶ 14 Stalking is "a course of conduct directed at a specific person, and the offender knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, the safety of a workplace, school, or place of worship, or the safety of a third person or suffer emotional distress." 740 ILCS 21/10 (West 2022). A "course of conduct" means two or more acts in which a person either directly, indirectly, or through any means "follows, monitors, observes, surveils, or threatens a person, workplace, school, or place of worship, engages in other contact, or interferes with or damages a person's property or pet." *Id*. "Stalking behavior includes following a person, conducting surveillance of the person, appearing at the person's home, work or school, making unwanted phone calls, sending unwanted emails, unwanted messages via social media or text messages, leaving objects for the person, vandalizing the person's property, or injuring a pet." *Id*. § 21/5.

¶ 15 We will reverse a stalking no-contact order only where the finding was against the manifest weight of the evidence. *Piester*, 2015 IL App (3d) 140457, ¶ 12. That means "only if the opposite conclusion is clearly apparent or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *McNally*, 2015 IL App (1st) 134048, ¶ 12.

¶ 16    Here, the absence of a report of proceedings precludes meaningful review of Pointer's appeal. As mentioned, the record on appeal consists solely of the common law record. As the appellant, Pointer bears the burden of providing a sufficiently complete record to support a claim of error. See Ill. S. Ct. Rs. 321 (eff. Oct. 1, 2020), 323 (eff. July 1, 2017); *Graves v. Cook County Republican Party*, 2020 IL App (1st) 181516, ¶ 39. In the absence of a more complete record, we must presume that the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Foutch v. O'Bryant*, 99 Ill. 2d. 389, 391-92 (1984). Any doubts arising from the incompleteness of the record must be resolved against the appellant. *Id*. at 392.

¶ 17    The record on appeal does not include a report of proceedings from that hearing, nor has Huber provided an acceptable substitute, such as a bystander's report or an agreed statement of facts. See Ill. S. Ct. R. 323(a), (c), (d) (eff. July 1, 2017). As a result, we lack knowledge of the evidence, arguments, evidentiary rulings, and objections presented at the hearing. Consequently, we cannot determine whether the judgment was against the manifest weight of the evidence, and presume that the trial court acted in conformity with the law and affirm the judgment of the trial court. *Foutch*, 99 Ill. 2d. at 391-92.

¶ 18    For the same reasons, Pointer's argument that the trial court improperly admitted unauthenticated exhibits fails. "A determination of the admissibility of evidence is in the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 35. Without a report of proceedings, we cannot review the trial court's decisions and presume proper admission of the evidence. *Foutch*, 99 Ill. 2d at 391-92.

¶ 19    Next, Pointer contends that the trial court abused its discretion in awarding attorney's fees, asserting that Huber did not establish that the fees were reasonable and necessary. He argues that

Huber's fee petition failed to specify the nature of the legal services performed, thus preventing a proper evaluation of reasonableness of the fees under the Act.

¶ 20    The award of attorney's fees and costs falls within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *McHenry Savings Bank v. Autoworks of Wauconda, Inc.*, 399 Ill. App. 3d 104, 113 (2010). "A properly supported fee petition must specify the services performed, by whom, the time spent expended, and the rate charged." *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 102. Fees are only justified when the party seeking the fees presents more than "a mere compilation of hours multiplied by a fixed hourly rate," since that information is insufficient to establish the fees' reasonableness. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983-84 (1987).

¶ 21    Pointer asserts that redactions in the fee petition do not satisfy the requirements established in *Kaiser*. Huber supported her fee petition with an invoice detailing the legal fees charged by her counsel, including time spent on entries and the amount billed for each, as well as an affidavit from her counsel explaining counsel's experience and the rate billed for legal services performed. Huber maintained that the redactions were necessary to prevent disclosure of information protected by the attorney-client privilege and that an unredacted copy was provided to the court before the hearing.

¶ 22    Although the court must have sufficient information to assess the reasonableness of fees, a fee petition has to present some evidence from which the court may conduct its review. *See Naperville South Commons, LLC v. Nguyen*, 2013 IL App (3d) 120382, ¶ 19. The invoice attached to Huber's fee petition listed the hours worked on individual entries and the fees charged for each. Because the descriptions are redacted in the version before us, and because Pointer did not provide

the hearing transcript, we are unable to review the decision regarding reasonableness and must assume that the decision conformed with the law. *Foutch*, 99 Ill. 2d. at 391-92; see also *International Ass'n of Fire Fighters Local 4646 v. Village of Oak Brook*, 2024 Ill. App. 3d 220466, ¶¶ 62-65 (award of attorney's fees not abuse of discretion where appellant failed to provide report of proceedings on appeal). We affirm the award of attorney's fees.

¶ 23   Finally, Pointer argues that the reduction in attorney's fees constitutes an abuse of discretion as the court did not explain the basis for the reduction. Pointer is correct that a trial court must specify the reasons justifying a reduction. *Richardson*, 375 Ill. App. 3d at 315. Notwithstanding that this argument appears to contradict Pointer's interests, review the reduction in fees is not possible due to the absence of a transcript. Accordingly, we must presume that the trial court acted in conformity with the law. *Foutch*, 99 Ill. 2d at 391-92; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 24   Affirmed.