NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200294-U

NO. 4-20-0294

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 9, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| KRISTINE K. GEISER, | ) | Circuit Court of |
|     Petitioner-Appellee, | ) | McLean County |
|     and | ) | No. 15D384 |
| COLBY F. GEISER, | ) | |
|     Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Sarah R. Duffy, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding respondent failed to establish any error with respect to the trial court's denials of his motions for a continuance and findings concerning child support and the classification and distribution of marital property.

¶ 2    Respondent, Colby F. Geiser, appeals from the trial court's judgment dissolving his marriage to petitioner, Kristine K. Geiser. On appeal, Colby argues the trial court's (1) denial of his motion for a continuance was an abuse of discretion, (2) findings he is obligated to Kristine for child support in the amount of $1248 per month and for child support arrears in the amount of $14,785.68 were an abuse of discretion, and (3) finding he owed Kristine $168,706.60 for her share of the marital property was against the manifest weight of the evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         In October 2011, Kristine and Colby married. They then had one child together. In August 2015, Kristine filed a petition for dissolution of marriage. In her petition, Kristine sought temporary and permanent care and custody for the parties' child as well as an order requiring Colby to pay her temporary and permanent child support. In October 2015, counsel entered an appearance on behalf of Colby and, in February 2016, filed an answer to Kristine's petition on Colby's behalf. Litigation then ensued before the trial court for about four years.

¶ 5         During the pretrial litigation, the trial court, after awarding Kristine temporary decision making responsibilities for the parties' child and the majority of parenting time, issued orders directing Colby to make temporary child support payments to Kristine, provide Kristine written documentation setting forth his income, pay one-half of an evaluation for the child, and pay for a portion of attorney fees incurred by Kristine. On multiple occasions, the court found Colby to be in indirect civil contempt for his failure to comply with these orders.

¶ 6         On March 11, 2019, the trial court entered a final pretrial order concerning the allocation of parental responsibilities, which scheduled a final pretrial conference for May 2, 2019, and a trial for May 28, 29, and 30, 2019.

¶ 7         On April 11, 2019, Colby's counsel filed a motion to withdraw from the case. The motion alleged Colby was unable to fulfill a financial obligation to counsel, substantial time and proceedings would be required for further representation of Colby, Colby had no objection to counsel withdrawing, and withdrawal could be accomplished without any material adverse effect to Colby.

¶ 8         On May 2, 2019, the trial court commenced the final pretrial conference for the

allocation of parental responsibilities. The record on appeal contains no transcripts, bystander's report, or agreed statement of facts from the conference. As gleaned from a docket entry, the court received a written acknowledgement during the conference. The acknowledgment, which is contained in the record on appeal, is signed by Colby and dated May 2, 2019. It indicates Colby received a copy of the motion to withdraw and had no objection. The court entered an order which allowed Colby's counsel to withdraw, granted Colby 21 days to obtain new counsel, continued the final pretrial conference for the allocation of parental responsibilities to May 24, 2019, and directed Colby's prior counsel to mail a copy of the order to Colby. That same day, Colby's prior counsel filed a certificate of service indicating he served a copy of the court's order upon Colby by both mail and e-mail.

¶ 9        On May 20, 2019, Colby filed a *pro se* appearance.

¶ 10        On May 21, 2019, Colby filed a motion for a continuance. In his motion, Colby requested the trial court to continue the scheduled trial, in part, to allow him time to secure new counsel.

¶ 11        On May 24, 2019, the trial court held the continued final pretrial conference for the allocation of parental responsibilities. The record on appeal contains no transcripts, bystander's report, or agreed statement of facts from the continued conference. As gleaned from a docket entry, Colby appeared at the hearing and the trial for the allocation of parental responsibilities remained scheduled to commence on May 28, 2019.

¶ 12        On May 28, 29, and 31, 2019, the trial court held a trial for the allocation of parental responsibilities. The record on appeal initially contained no transcripts, bystander's report, or agreed statement of facts from the trial. Colby later—at the same time he filed his reply brief—

- 3 -

filed a motion to supplement the record with a portion of the transcripts from May 28, 2019, which this court generously granted with no objection from Kristine. As gleaned from the transcripts provided, Colby addressed his motion for a continuance immediately prior to the commencement of the trial. Colby noted he "asked for a continuance" during the continued final pretrial conference and the court made a "decision at that time." Colby requested the court to "revisit your decision and grant my request to continue" to secure counsel. Kristine, in response, noted with respect to the continued final pretrial conference, "[t]he court heard the motion ***[,] made the determination." After hearing from Colby and Kristine, the court stated it considered Colby's comments as a "renewed" motion for a continuance and it was "once again" denying the motion. In support of its decision, the court stated as follows:

> "Just for practical purposes, your counsel filed a motion to withdraw on April 11[,] 2019, and within that document that he filed, he indicated that you *** had no objection to his withdrawal from [the] case. So that means to me that as of at least April 11[,] 2019, you were aware your counsel was getting out of the case.
>
> Your motion to continue is not filed until the week of final pre-trial, which is approximately or actually just at one week prior to a three-day trial setting. It would be a different story in this particular case if this was a relatively new matter and it had been rushed to hearing, but I believe I mentioned on Friday, and I will mention again for the record, this case was filed on August 10[,] 2015. It appears that you entered your appearance on October 9[,]

- 4 -

2015. So by my math, that's three-and-a-half years that this case has been pending.

Our [s]uprme [c]ourt has given me direction, as well as any other judge hearing family matters, that we are to bring these cases to resolution within 18 months absent a good cause, and in this particular case, that has gone way beyond that time, and, in fact, we have had these trial dates set for an extended period of time, as well. Specifically, I set these trial dates on March 11[,] 2019[,] giving you three days, three full days of the court's time, and so one week prior to that suggesting a motion to continue is appropriate because you need counsel, in my mind, is not a sufficient reason to continue this matter."

After denying Colby's renewed motion for a continuance, the court heard evidence and argument concerning the allocation of parental responsibilities. The record on appeal contains no transcripts, bystander's report, or agreed statement of facts from that portion of the trial.

¶ 13    In June 2019, the trial court entered an allocation of judgment and parenting time order.

¶ 14    In July 2019, the trial court entered a final pretrial order concerning the financial issues, which scheduled a trial for August 26, 2019, with trial exhibits to be provided to the opposing party by August 19, 2019.

¶ 15    On August 26, 2019, the trial court held a trial on the financial issues. Kristine testified and presented approximately 100 exhibits. Colby testified and presented testimony from

his fiancée, Dara White, and approximately 10 exhibits. The following is gleaned from the testimony and exhibits presented.

¶ 16        Kristine explained obtaining discovery information from Colby had been an arduous and drawn out process. With respect to Colby's income for child support purposes, Kristine believed Colby had been intentionally trying to shield or avail ownership of businesses at which he worked—Colby Company and Clean Cut Painting and Handyman—by listing only his fiancée as the owner. Because Colby had not provided balance sheets for the businesses, Kristine subpoenaed bank records and then reviewed deposits and calculated estimated expenses to determine Colby's income between 2017 and 2019. From her review, Kristine calculated Colby having income during that period of $108,280.89. Kristine also reviewed tax statements to determine Colby's income for 2013 and 2014. From her review, Kristine calculated Colby having income of $316,582 for 2013 and $188,488 for 2014. Kristine provided a demonstrative exhibit, exhibit No. 33, which set forth a calculation of Colby's average income of $204,450 based upon her other calculations. Kristine also testified about Colby's child support arrearage totaling $14,785.16. With respect to the classification and distribution of property, Kristine produced exhibit Nos. 36 through 85 showing real estate valued at over $2 million and exhibit Nos. 86 through 95 showing net proceeds from the sale of some real estate at $339,413. Kristine testified Colby failed to provide a full accounting of where the proceeds from the disposal of the real estate had gone.

¶ 17        Colby explained he provided Kristine with all the requested discovery information. With respect to his income for child support purposes, Colby testified 2013 and 2014 "were good years" for his business, World Painting Company. When he and Kristine began to have marital

issues, he also began to have financial issues with his business which led to its closure and him seeking bankruptcy. In 2016, Colby started a business, Extreme Painting Professionals, with his brother. Colby testified he was given a "standard salary" and then would "split some of the profit" at the end of the year pursuant to a "gentleman's agreement." Colby eventually had a falling out with his brother. Colby testified he had not filed his 2016 taxes because he was disputing receipt of the income reported by his brother. After the falling out with his brother, Colby began working as an independent sales consultant for a previous client. He began "selling extremely well," so much so that the company "couldn't keep up with what I was selling, and so they asked me to leave the company." After leaving that company, Colby decided to start a company "together" with his fiancée, White. The company was named Colby Company. Colby and White testified Colby was only an employee of the company. Colby acknowledged one of the reasons he was only an employee was because of the ongoing divorce proceedings. Colby and White testified the company was unsuccessful. White later purchased Clean Cut Painting and Handyman, which was financed through its seller. Colby and White testified Colby was also only an employee of that company. Colby and White testified the company was unsuccessful. White testified Colby was previously allowed to obtain cash from company accounts so long as it was used for business purposes. White acknowledged Colby was allowed to use a "company card" for personal expenses but indicated those expenses were then deducted from his salary. White testified Colby's income was around $35,000 to $45,000 annually. With respect to the classification and distribution of property, Colby testified he "signed off" his interests in any real estate but did not otherwise explain what happened to any proceeds therefrom.

¶ 18    In January 2020, the trial court entered a judgment of dissolution of marriage. In its

judgment, the court initially found: "This [c]ourt does not find [Colby] and his fiancé[e], [White], to be credible. Their testimony was evasive and not believable." With respect to child support, the court found:

"18. [Colby] failed to produce any meaningful exhibits which would assist the [c]ourt in setting his child support obligation or setting his obligation for child-related expenses. [Colby] maintains he has no bank account and that his income is only the wages being paid by [his] fiancé[e]'s business. This is not credible and is a means by which [Colby] is trying to hide income and minimize his child support obligation.

19. [Kristine] spent considerable time and effort in providing to the [c]ourt a means by which to set [Colby's] child support on permanent basis. [Colby] was not cooperative in providing information, and [Kristine] was required to piece together an accurate amount for [Colby's] income.

20. [Kristine's] [e]xhibit 33 which utilizes other exhibits to calculate an average annual income for [Colby] is adopted by this [c]ourt."

The court ordered Colby to pay Kristine $1248 per month for child support and $14,785.68 for child support arrears. With respect to the classification and distribution of marital and nonmarital property, the court initially noted: "The [c]ourt was not made *** aware of any assets that either party claimed to be non-marital." The court then found:

"12. The only assets which are subject to division are the proceeds from the real estate sold by [Colby] as provided in [Kristine's] [e]xhibits 86-95, which had total net proceeds of $339,413.21.

13. [Colby] provided no valid explanation as to what happened to these proceeds, which are the only assets of value in this case.

14. As provided in [Kristine's] [e]xhibit 99, [Colby] filed individual bankruptcy on or about September 14, 2016. The Order of Discharge was entered on March 9, 2017.

15. For the real estate for which [Kristine] presented the assessed values ([Kristine's] [e]xhibits 36-85), but for which, there was no confirmation of continuing ownership, the [c]ourt does not consider these properties to be assets subject to division. It is likely these assets were surrendered in [Colby's] bankruptcy, and if [Colby] still retained an ownership interest which he could sell after the bankruptcy, this [c]ourt has no doubt that he would have done so."

The court ordered Colby to pay Kristine $169,706.60 for one-half of the net proceeds realized from the sale of the real estate.

¶ 19 In March 2020, counsel entered an appearance and filed a motion for reconsideration on Colby's behalf. In the motion, Colby argued the trial court should have

determined his income for child support purposes by averaging the last two to three years as any other years contained outdated information which did not reflect his prospective income. Colby also argued the court erroneously divided the proceeds from the real estate listed in Kristine's exhibit No. 95 as those proceeds were from the sale of nonmarital real estate and erroneously divided the proceeds from the properties listed in Kristine's exhibit Nos. 86-94 evenly as he "only owned one[-]half of these entities and[,] therefore, only one[-]half of the proceeds were marital property."

¶ 20    In May 2020, the trial court, after receiving a response from Kristine and a reply to the response from Colby, conducted a hearing on the motion for reconsideration. The record on appeal contains no transcripts, bystander's report, or agreed statement of facts from the hearing. As gleaned from a docket entry, both parties appeared with counsel *via* Zoom, arguments were made by counsel, an "[o]ral ruling [was] announced," and the motion for reconsideration was denied.

¶ 21    This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, Colby argues the trial court's (1) denial of his motion for a continuance was an abuse of discretion, (2) findings he is obligated to Kristine for child support in the amount of $1248 per month and for child support arrears in the amount of $14,785.68 were an abuse of discretion, and (3) finding he owed Kristine $168,706.60 for her share of the marital property was against the manifest weight of the evidence. Kristine disagrees with each of Colby's arguments.

¶ 24                    A. The Denial of the Motion for a Continuance

¶ 25    Colby argues the trial court's denial of his motion for a continuance was an abuse

of discretion. Specifically, Colby asserts he should have been given additional time to secure new counsel given the complexity of the issues, the absence of any prejudice to Kristine, and the absence of any evidence suggesting the litigation had been prolonged solely due to his misconduct.

¶ 26 "Litigants do not have an absolute right to a continuance." *Somers v. Quinn*, 373 Ill. App. 3d 87, 96, 867 N.E.2d 539, 548 (2007). The decision of whether grant or deny a continuance is left to the sound discretion of a trial court. *Id.* A trial court's decision to deny a motion for a continuance is reviewed for an abuse of discretion. *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 94, 107 N.E.3d 349. A trial court abuses its discretion only when its decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the court. *Id.* The denial of a motion for a continuance will not be disturbed on appeal without a showing of prejudice to the complaining party. See *In re A.F.*, 2012 IL App (2d) 111079, ¶ 36, 969 N.E.2d 877; *DeBow v. City of East St. Louis*, 158 Ill. App. 3d 27, 38, 510 N.E.2d 895, 903 (1987); *Shumak v. Shumak*, 30 Ill. App. 3d 188, 193, 332 N.E.2d 177, 182 (1975).

¶ 27 As an initial matter, Colby, as part of his argument suggesting the trial court's denial of his motion for a continuance was an abuse of discretion, argues, "[a]llowing withdrawal of counsel 26 days before a three full day trial constitutes an abuse of discretion by the trial court." That argument, however, presents a separate issue—whether the court erred in allowing counsel's withdrawal. Not only is that issue forfeited due to the failure to raise it before the trial court (see *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 38, 123 N.E.3d 1271 ("[i]ssues not raised before the trial court are deemed forfeited and may not be raised for the first time on appeal")), it is also forfeited due to his failure to provide any meaningful argument with citation to supporting legal authority on appeal (see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)

- 11 -

("[a]rgument *** shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); see also *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804, 909 N.E.2d 353, 362 (2009) (noting the failure to comply with Illinois Supreme Court Rule 341(h)(7) results in forfeiture)). Further, Colby agreed to the motion to withdraw. Accordingly, we decline to consider Colby's argument.

¶ 28 Turning to the issue properly before this court, Colby filed a written motion for a continuance on May 21, 2019. As gleaned from the transcripts provided from May 28, 2019, the trial court addressed and denied Colby's motion during the May 24, 2019, continued final pretrial conference for the allocation of parental responsibilities. Colby then requested the court to "revisit" its decision immediately prior to the commencement of the trial for the allocation of parental responsibilities on May 28, 2019. The court, after indicating it would entertain Colby's comments as a renewed motion for a continuance, denied the motion. At no other point thereafter did Colby renew his motion for a continuance.

¶ 29 On appeal, Colby fails to identify any prejudice resulting from the trial court's denial of his motion for a continuance or denial of his renewed motion for a continuance. He raises no complaint with the allocation of parental responsibilities, the subject of the May 28, 29, and 31 trial. Colby suggests he was prejudiced in that he, as a non-attorney, could not be expected to know to renew his motion for a third time prior to the trial concerning the financial issues. A *pro se* litigant is not, however, subject to a more lenient standard but rather must comply with the same rules of procedure required of attorneys. *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45, 143 N.E.3d 213. Absent a showing of prejudice, there is no basis to disturb the trial court's denial of the motion for a continuance or denial of the renewed motion for a

continuance.

¶ 30    Prejudice aside, we also cannot say the trial court abused its discretion when it denied the motion for a continuance or the renewed motion for a continuance. With respect to the court's denial of the motion for a continuance, Colby fails to provide any transcripts, bystander's report, or agreed statement of facts from the May 24, 2019, continued final pretrial conference when the motion was denied. Without a sufficient record from that conference, we cannot say the trial court's denial was an abuse of discretion. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis."). With respect to the court's denial of the renewed motion for a continuance, the court's comments indicate it was appropriately concerned with Colby's lack of diligence, noting the trial had been set since March 11, 2019, Colby was aware his counsel intended to withdraw from the case since at least April 11, 2019, and Colby had only filed his written motion for a continuance a week prior to trial. See *Merchants Bank v. Roberts*, 292 Ill. App. 3d 925, 927, 686 N.E.2d 1202, 1205 (1997) ("A decisive factor is whether the party asking for the continuance has shown diligence in proceeding with the cause."). In addition, Colby did not provide the court with any information or evidence concerning his attempts to obtain counsel during the 26-day period following his counsel's withdrawal. See *Demos v. Haber*, 101 Ill. App. 3d 901, 903, 428 N.E.2d 972, 973-74 (1981) ("The absence of an attorney does not give a litigant the right to a continuance, but the diligence of the party seeking it is a critical consideration in determining whether or not to grant a continuance."). Under the circumstances presented, the trial court's denial

was not an abuse of discretion.

¶ 31        Colby's reliance on *Reecy v. Reecy*, 132 Ill. App. 2d 1024, 271 N.E.2d 91 (1971), in support of his position is unpersuasive as that case is factually distinguishable. In *Reecy*, the appellate court found the trial court's denial of the motion for a continuance filed by the plaintiff's newly retained counsel was an abuse of discretion where the record showed counsel had only 16 days to prepare for trial, had an extremely heavy court schedule, had been absent from the state for seven days, wished to avail himself of certain discovery procedures, and had been ill with the flu for several days and ordered by a doctor to be confined to bed on the date the trial was scheduled to commence. *Id.* at 1026-28. Colby cites no similar facts here. Similarly, Colby's reliance on *Duran v. Chicago & North Western Ry. Co.*, 26 Ill. App. 3d 645, 325 N.E.2d 368 (1975), in support of his position is unpersuasive as that case is factually distinguishable. In *Duran*, the appellate court found the trial court's denial of the motion for a continuance filed by the plaintiff's counsel was an abuse of discretion where the record showed plaintiff had been diligent in prosecuting her case and was justified in believing she would be granted a final continuance for the purpose of bringing in a material witness who was in delicate health from outside the country. *Id.* at 646-47. Colby cites no similar facts here.

¶ 32                    B. The Child Support Findings

¶ 33        Colby argues the trial court's findings he is obligated to Kristine for child support in the amount of $1248 per month and for child support arrears in the amount of $14,785.68 were an abuse of discretion. Specifically, Colby argues the trial court abused its discretion by relying solely on Kristine's calculations of his income and failing to consider the evidence he presented of his income and ability to pay any support obligation. Alternatively, Colby argues the court

abused its discretion by using income information from 2013 and 2014 as that information did not reflect his prospective income.

¶ 34　　　　In computing any child support obligation, the first step for the trial court is to determine each parent's income. 750 ILCS 5/505(a)(1.5)(A) (West 2014). A trial court's factual findings as to a parent's income will not be reversed on appeal so long as the findings are not against the manifest weight of the evidence. *In re Marriage of Gabriel*, 2020 IL App (1st) 182710, ¶ 39, 157 N.E.3d 992. The credibility and forthrightness of a parent in disclosing income is a factor to be considered in accepting evidence of a parent's income. *In re Marriage of Karonis*, 296 Ill. App. 3d 86, 92, 693 N.E.2d 1282, 1287 (1998). In situations where income fluctuates from year to year, income averaging is an approved method to determine a parent's income. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1025, 785 N.E.2d 172, 177 (2003). A trial court's decision concerning the years of income to average to arrive at a parent's income will not be reversed on appeal absent an abuse of discretion. See *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103, 655 N.E.2d 1144, 1149 (1995) ("At least the three prior years should be used to obtain an accurate income picture. Beyond that, however, it must be left to the discretion of the trial court, as facts will vary in each case.").

¶ 35　　　　First, contrary to the argument presented, the trial court did consider the evidence Colby presented at trial concerning his income and ability to pay. As to the evidence he presented, Colby cites his 2018 tax return, a financial affidavit, and the testimony from him and White. Colby did not, however, offer his 2018 tax return and the financial affidavit during the trial on the financial issues. Accordingly, the trial court could not have erred in failing to consider such evidence. As to the testimony presented, the judgment of dissolution of marriage makes clear the

court considered and rejected the testimony from Colby and White, finding the witnesses were not credible. Colby does not otherwise take issue with the court's credibility assessments. See *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1042, 899 N.E.2d 1097, 1104 (2008) ("A reviewing court will defer to a trial court's determination of credibility because the trial court is in the best position to observe the conduct and demeanor of witnesses.")

¶ 36    Second, we cannot say the trial court abused its discretion by using income information from 2013 and 2014. While it may be unusual for a court to rely on income information from prior to a discharge in bankruptcy, the circumstances of this case are unique. Colby provided little information as to the bankruptcy proceedings. Kristine testified to her belief that Colby had been intentionally obscuring his income. The court agreed with Kristine's assessment, finding Colby was "trying to hide income and minimize his child support obligation." The income information from 2013 and 2014 was representative of the income Colby received just prior to him being placed on notice by Kristine that she wished to have the marriage dissolved, be awarded temporary and permanent care and custody of their child, and have an order entered requiring Colby to pay her temporary and permanent child support. Under these circumstances, it would be difficult to say the court abused its discretion by using income information from 2013 and 2014. In any event, we certainly cannot make such a finding based on the record presented. Colby, through counsel, raised the issue in his motion for reconsideration. After doing so, the court conducted a hearing where it entertained argument by counsel and then announced an oral ruling. Colby fails to provide any transcripts, bystander's report, or agreed statement of facts from the hearing. Without a sufficient record from that hearing, we cannot say the court abused its discretion by using income information from 2013 and 2014. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 37        As a final matter, Colby briefly argues a lower monthly child support obligation was warranted given the distribution of marital property and child support arrearage obligation. The issue of whether the monthly child support obligation should have been reduced given the distribution of marital property and child support arrearage obligation was not raised before the trial court. Accordingly, this issue is forfeited, and we decline to consider Colby's argument. See *Enbridge Pipeline (Illinois), LLC*, 2019 IL App (4th) 150544-B, ¶ 38. Similarly, Colby briefly argues the court erroneously relied upon Kristine's calculation of his income for 2013 as the calculation was based upon a joint tax return which contained wages received by Kristine. The issue of whether Kristine's calculation of Colby's income for 2013 was correct was not raised before the trial court. Accordingly, this issue is forfeited, and we decline to consider Colby's argument. See *id.*

¶ 38                            C. Marital Property Finding

¶ 39        Colby argues the trial court's finding he owed Kristine $168,706.60 for the one-half share of the marital property was against the manifest weight of the evidence. Specifically, Colby asserts the court erroneously divided the proceeds from the real estate listed in Kristine's exhibit No. 95 as those proceeds were from the sale of nonmarital real estate and erroneously divided the proceeds from the properties listed in Kristine's exhibit Nos. 86 through 94 evenly as those properties were owned jointly by him and at least one other person.

¶ 40        At the trial on the financial issues, Colby made no objection to Kristine's suggestion the proceeds from the real estate listed in exhibit Nos. 86 through 95 were marital property, nor did he suggest Kristine was entitled to anything less than one-half of the those proceeds. Instead, Colby took issue with the court's classification and distribution of the proceeds from the real estate

for the first time in his motion for reconsideration.

¶ 41　　　　　After Colby took issue with the court's classification and distribution of the proceeds from the real estate listed in exhibit Nos. 86 through 95 in his motion for reconsideration, the trial court conducted a hearing where it entertained argument by counsel and then announced an oral ruling. Again, Colby fails to provide any transcripts, bystander's report, or agreed statement of facts from the hearing. Without a sufficient record from that hearing, we cannot say the court's finding he owed Kristine $168,706.60 for the one-half share of the marital property was against the manifest weight of the evidence. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 42　　　　　　　　　　　　　　III. CONCLUSION

¶ 43　　　　　We affirm the trial court's judgment.

¶ 44　　　　　Affirmed.