2026 IL App (1st) 240257-U

SECOND DIVISION
June 23, 2026

No. 1-24-0257

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| YITZCHOK KALMAN, CLASSIC GENERAL | ) | |
| CONTRACTORS, INC., A. SCHOENEMAN & CO. | ) | Appeal from the |
| INC., and M. GERALD FRIED & ASSOCIATES, LLC. | ) | Circuit Court of |
| | ) | Cook County |
| | ) | |
| Defendants. | ) | No. 2016 CH 7939 |
| | ) | |
| (Yitzchok Kalman, Cross-Plaintiff-Appellant, Counter- | ) | Honorable |
| Defendant-Appellee, and Intervenor-Defendant-Appellee; | ) | Thomas More Donnelly, |
| Zipponah Kalman, Plaintiff-Appellant, Counter- | ) | Judge Presiding |
| Defendant-Appellee, and Intervenor-Defendant-Appellee; | ) | |
| Classic General Contractors, Inc., Counter-Plaintiff- | ) | |
| Appellant and Cross-Defendant Appellee; A. Schoeneman | ) | |
| & Co., Inc. and Allen Schoeneman, Defendants-Appellees; | ) | |
| Ronald and Mitchell Schoeneman, Intervenor- | ) | |
| Plaintiff-Appellants) | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed in part, dismissed in part. This court has no jurisdiction over cross-appeals. Without transcript, this court cannot review appellants' arguments relating to trial judgment. Trial court did not abuse discretion in refusing to award fees or impose sanctions. Appellant presented no basis to award prejudgment interest.

¶ 2    This case involves a decade-long fight between the plaintiff homeowners and the defendant companies they initially hired to help them rebuild after a devastating house fire. The proceedings ultimately included a complaint, countercomplaint, and intervenors' complaint. A good ten years after the fire, the case was tried to the bench. The court awarded almost no relief to any party. Of the hundreds of thousands of dollars sought by plaintiffs, the court only awarded $11,000 to the homeowners. Defendants and intervenor-plaintiffs got nothing. As nobody was happy with the court's judgment, multiple notices of appeal and cross-appeals were filed.

¶ 3    As we explain below, we lack jurisdiction over the cross-appeals in this matter. As to plaintiffs' appeal, we affirm the judgment below. Our review of the judgment is significantly impaired by the lack of a trial transcript. Nor have plaintiffs convinced us the court otherwise erred in declining to impose fees or sanctions or award prejudgment interest.

¶ 4                              BACKGROUND

¶ 5    In 2014, a fire heavily damaged the home of Yitzchok and Zipponah Kalman, plaintiffs here. The Kalmans hired A. Schoeneman & Co., Inc., or "ASCI," as a public adjuster to negotiate their fire claim with Erie Insurance Exchange (Erie). A public adjuster is licensed by the state to assist an insured in negotiating the value of a claim or loss under an insurance policy. See 215 ILCS 5/1510 (West 2024); *id.* § 1515 (licensure requirement).

¶ 6    The Kalmans believed that ASCI was a licensed adjuster. As it turned out, while the two Schoeneman brothers (Ron and Mitchell) were licensed, the company technically was not. Regardless, the Kalmans and ASCI entered into a written agreement by which the Kalmans agreed to pay "(7%) of all sums recovered by adjustment, appraisal, arbitration, litigation, settlement or otherwise pursuant to the insurance contract." Notably, the contract also provided that the "Adjustment fee for building is waived if [ASCI] or its affiliate performs the repairs."

¶ 7     As the Kalmans' public adjuster, ASCI recommended the Kalmans hire Classic General Contractors, Inc. (Classic) to perform the repairs. According to the Kalmans, however, they were unaware that Classic and ASCI were affiliated—the Schoeneman family owned both companies. (Defendants dispute that the Kalmans were unaware of this fact.) In any event, in August 2014, the Kalmans hired Classic to complete the repairs on their home.

¶ 8     The written contract contains well over 100 "punch list" items and provides that "[t]he aforementioned work will be completed in a neat and workmanlike manner for the sum of money allowed by the insurance company, said amount being *full insurance proceeds*." (Emphasis added.) The contract also contains a fee-shifting provision: in the event of any dispute between the parties, "the prevailing party in such action shall be entitled to his/her/its costs, expenses and fees, including but not limited to reasonable attorney's fees."

¶ 9     ASCI performed its adjusting services for the Kalmans. Erie ultimately valued the fire damage claim to their home at $222,434.28. ASCI was able to secure a significant additional sum for personal property damage—approximately $167,000. For about a year, Classic performed work to repair the home, but the Kalmans were unhappy and fired both ASCI and Classic in August 2015. They then hired M. Gerald Fried as their public adjustor. (Fried would later become the Kalmans' expert witness in the litigation, too.)

¶ 10    At the time Classic and ASCI were fired, Erie had distributed approximately $150,000 of the building damage claim. Classic represented to Fried that it had substantially completed the work. Fried tried to get the remaining funds released by Erie. But on further review, the Kalmans and Fried believed that over 40 items on the punch list were either not done or done incorrectly. The parties were unable to reach an agreement on whether to release the additional funds and on how they should be spent.

¶ 11    Shortly after terminating their contract with ASCI, the Kalmans filed a complaint against ASCI with the Illinois Department of Insurance. In March 2016, the department's investigation determined that ASCI "was not properly licensed at the time the contract was executed pursuant to [Section] 1515(c) of the Illinois Insurance Code." The department wrote that "all contracts entered into by anyone in violation of Section 1515 of the Code are void." See 50 Ill. Adm. Code 3118.35 (eff. Jan. 9, 2015) (prior version). The Department requested that any adjustor fees collected by ASCI be returned to the Kalmans. The Department sent a second letter, in September 2015, requesting that ASCI return the fee along with "any outstanding payments/checks that were issued by the insurance company."

¶ 12    In June 2016, Erie filed an interpleader action to have the court resolve the dispute. See 735 ILCS 5/2-409 (West 2014) (allowing interpleader suit to permit court to settle dispute over funds held by plaintiff). Erie named the Kalmans, ASCI, and Classic. According to that complaint, "Erie estimates that Classic is owed an additional $40,575.37 for the repair work it has performed." It also "estimates that an additional $34,558.37 of work remains to be done on the residence plus $1,350 in building permits." Erie offered to pay Classic the amount it believed was owed but "[t]he parties have not consented to paying Classic," nor could they agree on how to distribute the rest of the claim. As such, Erie deposited "the remaining loss settlement of $75,133.74 with the Court for the Court to determine the appropriate distribution."

¶ 13    Erie's interpleader action started an avalanche of claims. First, in September 2016, the Kalmans filed crossclaims against Classic and ASCI. Classic filed a counterclaim to foreclose on its mechanic's lien. Finally, in November 2018, Ronald and Mitchell Schoeneman—the *individually* licensed adjustors at ASCI—intervened and filed a complaint for *quantum meruit* against the Kalmans. The intervenor-complaint alleged that, in the event the court concluded that

the ASCI contract was void due to ASCI's lack of licensure, Ron and Mitchell were entitled to recover for their individual efforts in adjudicating the Kalmans' claim.

¶ 14     As interest rates plummeted due to the COVID-19 pandemic, the Kalmans attempted to refinance their home with a much more favorable interest rate. They claim they were unable to obtain refinancing due to Classic's mechanic's lien on the property.

¶ 15     Eventually, the court dismissed Erie and allowed the parties to fight among themselves. The court construed the Kalman's crossclaims as the "complaint." In relevant part, this complaint alleged several claims against the various parties.

¶ 16     First, the breach of contract action against ASCI (count 1) alleged that ASCI illegally failed to disclose its financial ties with Classic. Count 3 sought a declaration that their contract with ASCI was "void." As relief, the Kalmans sought, among other things, "damage for preventing Plaintiffs' ability to refinance their property" by the filing of the mechanic's lien.

¶ 17     Count 4 sought a declaration against Classic that its contract with the Kalmans had been terminated and that Classic "holds no interest in the funds currently held by Erie and Erie must distribute all remaining funds to Kalmans." Count 4 also sought damages related to the Kalmans' inability to refinance, given the mechanic's lien.

¶ 18     In Count 5, the Kalmans alleged that Classic violated the Consumer Fraud and Deceptive Practices Act by failing to deliver a brochure and failing to include an estimated completion date as required by the Illinois Home Repair and Remodeling Act. Count 7 sounded in breach of contract for Classic's allegedly shoddy work. Finally, count 8 was a common-law fraud claim against Allen Schoeneman stemming from misrepresentations about ASCI's licensure status. According to the complaint, had the Kalmans known of ASCI's affiliation with Classic, they would have cancelled the public adjuster contract and looked for a new adjuster.

¶ 19    The Kalmans' initial claims did not contain a jury demand. It was not until 2021, when the Kalmans sought leave to file their third amended crossclaims, that they included, for the first time, "a jury trial on all issues triable." They repeated the jury demand each time they further amended their claims.

¶ 20    Three relevant pre-trial decisions came in 2023. First, in March 2023, the court ruled on the parties' cross-motions for summary judgment. It denied ASCI's motion outright. The court entered summary judgment for the Kalmans "as to liability" on count 1 (breach of contract against ASCI) and on count 3 (declaratory judgment against ASCI) but not as to damages—the court was clear that "[d]amages are to be proven at Trial." The order also denied Classic relief on its mechanic's lien claim and "extinguished" the lien. Finally, the court ordered that the funds Erie had placed with the court "shall be released and transferred to the Kalmans."

¶ 21    Second, in June 2023, with an August trial date looming, ASCI filed a motion to "confirm that trial on August 28, 2023 is proceeding as a bench trial." ASCI argued that, though the Kalmans added a jury demand in 2021, it was untimely, nor had the Kalmans paid the required jury fee. The court confirmed the bench trial and refused to postpone the trial at the Kalmans' request.

¶ 22    And finally, not long after that hearing, the Kalmans filed an *emergency* motion to postpone trial and submit a new expert witness based on their discovery that their expert witness (and the replacement adjustor), Mr. Fried, had died.

¶ 23    On August 8, the court denied the Kalmans' emergency motion. The court allowed the Kalmans just three days—until August 11—to "disclose the identity and opinions of their expert witness to replace M. Gerald Fried." The court required the Kalmans to "present their replacement expert witness for a discovery deposition by no later than close of business on

August 18, 2023." The defendants then had leave to disclose *their* expert witness by August 21 and depose the same that week. The order ended: "Trial date of August 28, 2023 to stand." To no avail, the Kalmans desperately continued their efforts to convince the court to postpone the trial, arguing that the truncated expert schedule was "extremely prejudicial."

¶ 24    But as ordered, the Kalmans disclosed a new expert, Dan Cullen. On August 14, they filed two motions: a request for extension of time to submit Mr. Cullen's expert report and a motion *in limine* to admit the deposition and expert report of Mr. Fried as evidence at trial. It is not entirely clear what happened with these two motions. We could not locate an order disposing of these motions *in limine* prior to trial, nor have the parties cited one.

¶ 25    From August 28 to 30, the court held a bench trial on all pending claims. Unfortunately, we lack a full transcript; the record contains only the transcript from the final day of trial, and only because it was attached to a post-trial motion. That last day's transcript includes both closing arguments and the court's oral ruling, which gives us hints as to the evidence at trial.

¶ 26    We know from the court's comments, for example, that the Kalmans' new expert, Dan Cullen, testified, though we have none of his testimony. The court said that it reviewed deposition transcripts, but we don't know which depositions. The court and parties referenced several exhibits—photographs, damages charts, and apparently, a video—which we were likewise unable to locate in the record.

¶ 27    At the close of trial, the court made oral findings on each of the parties' claims. Ultimately, the court only granted relief on one claim, the Kalmans' claims against ASCI: "With respect to the Count III against [ASCI], there will be a finding against [ASCI] in the amount of $11,226.54." The court found these damages appropriate because the public adjuster's agreement "was void," given ASCI's lack of licensure, "and therefore all fees should be returned."

¶ 28    The court found "in favor of the Defendants and against Plaintiffs on all remaining counts," as the court did "not find the evidence was sufficient to prove up the cause of action in damages." The court did not believe that the "proof with respect to damages" was "linked up." It "did not find that there are damages proved by the evidence."

¶ 29    The court then made its findings on the Kalmans' complaint, claim by claim:

* Count 1 (against ASCI for not disclosing its ties to Classic): "the Court has disposed of that by directed verdict." (An oral ruling at trial of which we have no record.)

* Count 4 (seeking declaration that Classic has no right to remaining interpleaded funds and seeking damages—inability to refinance their home—caused by mechanic's lien): "I find that there was a violation" but "I do not find that there were any damages proven to be proximately caused by that failure."

* Count 5 (against Classic): "I do not find that there has been proof of damages resulting from any violation of the Consumer Fraud Act. I do not find the proof of damages was sufficient."

* Count 7 (breach of contract against Classic for shoddy work): "I do not find that the Plaintiff has proven a breach of contract. I find that the Plaintiff terminated the contract prior to completion, and I do not find a breach of contract."

* Count 8 (fraud against ASCI): "I do not find that you've proven *** all the elements of fraud by clear and convincing evidence. And moreover, I find that the statute of limitations bars the claim."

¶ 30    The court also denied Classic's and the Schoenemans' claims against the Kalmans. (As we lack jurisdiction to review those rulings, we will leave it at that.)

¶ 31    Within 30 days of the court's judgment, each party (the Kalmans, Classic, and the Schoenemans) moved for reconsideration. The parties also filed cross-petitions for fees.

¶ 32     The court denied all motions to reconsider and denied fees to all parties. These rulings occurred at a hearing where we lack a transcript of proceedings. This appeal followed.

¶ 33                                    ANALYSIS

¶ 34    We begin by addressing appellate jurisdiction, which we must consider on our own if the parties do not raise it. *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

¶ 35                                   I. Jurisdiction

¶ 36    The filing of a notice of appeal is the lone jurisdictional step initiating appellate review. *Id.* Absent a timely filed notice of appeal, "a reviewing court has no jurisdiction over the appeal and is obliged to dismiss it." *Id.*; see *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 217 (2009) (appellate court may not excuse jurisdictional defects).

¶ 37    The contents of a notice of appeal are governed by Supreme Court Rule 303(b). A notice "shall be designated 'Notice of Appeal,' 'Joining Prior Appeal,' 'Separate Appeal,' or 'Cross-Appeal,' as appropriate." Ill. S. Ct. R. 303(b)(iii) (eff. July 1, 2017).

¶ 38    A notice of appeal is generally required within 30 days of final judgment. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Once this court receives the notice filed with the circuit court, it is required to docket it. Ill. S. Ct. R. 303(e) (eff. July 1, 2017). Relevant here, a timely filed notice of appeal triggers a second timer:

> "If a timely notice of appeal is filed and served by a party, any other party, within 10 days
> after service upon him or her *** or within 30 days of the entry of the order disposing of
> the last pending postjudgment motion, whichever is later, may join in the appeal, appeal

separately, or cross appeal by filing a notice of appeal, *indicating which type of appeal is being taken*." Ill. S. Ct. R. 303(a)(3) (eff. July 1, 2017) (emphasis added).

¶ 39    Simply stated, while a notice of appeal is due within thirty days of entry of the order disposing of the last post-judgment motion, a cross-appeal may be filed within that same time frame or within ten days from the filing of the original notice of appeal, whichever is later. Given these different ways of appealing, the notice must indicate the type of appeal being taken. *Id.*

¶ 40    There is a fair amount to unpack here, including multiple appeals and cross-appeals and two different docketed appeals. Start with the basics. The court's order disposing of the post-trial motions was January 5, 2024. The thirtieth day following that order was February 4, 2024—a Sunday. So the last day to file a notice of appeal was Monday, February 5, 2024. See 5 ILCS 70/1.11 (West 2022) (weekends excluded from filing deadlines).

¶ 41    We will now consider our jurisdiction to hear the appeals of each of the three parties— the Kalmans, Classic, and the Schoenemans. Stay with us; it gets messy.

¶ 42                                   A. The Kalmans

¶ 43    This one is easy. The Kalmans filed a notice of appeal on February 2, 2024, within thirty days of January 5. We will call this the "Kalman Appeal." We have jurisdiction over this appeal.

¶ 44                                      B. Classic

¶ 45    Classic filed a notice of appeal on February 5, 2024. Like the Kalmans' notice of appeal, Classic checked the box "Appeal," leaving the "Cross-Appeal" box unchecked. Because Classic chose to file a notice of appeal marked as an "Appeal," the circuit court clerk docketed it as a separate appeal, case number 1-24-0265. Call this the "Classic Appeal." The Classic Appeal was timely, too, as it was filed within thirty days of January 5. So far, so good.

¶ 46     But on February 15, 2024, Classic filed a *second* notice of appeal, this time checking the box for "Cross-Appeal." The circuit court clerk docketed Classic's notice of cross-appeal into the Classic Appeal, not the Kalmans Appeal, leading to the absurd result that Classic was both appealing and cross-appealing in the same appeal. That makes no sense, of course, and it's contrary to the law; cross-appeals can only be filed by "any other party" besides the one that filed the notice of appeal. Ill. S. Ct. R. 303(a)(3) (eff. July 1, 2017).

¶ 47     (Before we criticize the circuit court clerk too harshly, consider a possible explanation for why it docketed this cross-appeal into the Classic Appeal: Classic filed the notice of cross-appeal on February 15, more than ten days after the Kalmans filed their notice of appeal, so it would have been untimely under the Kalmans Appeal; perhaps the clerk docketed it under the only appeal for which it was timely.)

¶ 48     In any event, the Classic cross-appeal was docketed inside the Classic Appeal. Classic took no corrective action to clarify things, such as asking this court to consolidate the two appeals or to re-docket its notice of cross-appeal. (Though as we just said, if Classic asked us to re-docket its cross-appeal under the Kalman Appeal, it would have been obviously subject to dismissal for lack of jurisdiction.)

¶ 49     It gets messier still: About six months later, on September 13, 2024, this court dismissed the Classic Appeal for want of prosecution, because Classic had not filed the record on appeal. Classic did not seek rehearing of that dismissal. See Ill. S. Ct. R. 367(a) (eff. Nov. 1, 2017) (party may seek rehearing of appellate court judgment within 21 days). Nor did Classic move for consolidation of the Classic Appeal with the Kalmans Appeal or take any other action. The mandate issued on October 28, 2024, and the Classic Appeal was dismissed.

¶ 50    In other words, Classic no longer has any appeal—not its original appeal or its cross-appeal. Its cross-appeal was likely never going to survive dismissal as we just explained above, but a simple motion to consolidate the Classic and Kalmans Appeals would have cured any problem with its initial notice of appeal.

¶ 51    We obviously prefer to adjudicate appeals on their merits, and this brings us no joy. But we have no discretion whatsoever in this regard. *Smith*, 228 Ill. 2d at 104; *Secura Insurance Co.*, 232 Ill. 2d at 217. We have no appeal from Classic before us; it was long ago dismissed.

¶ 52                                      C. The Schoenemans

¶ 53    On February 14, 2024, Ron and Mitchell Schoeneman filed a notice of cross-appeal. Their notice did not use the supreme court form but was clearly labeled a "cross-appeal." This notice of cross-appeal was docketed into the Kalmans Appeal.

¶ 54    But however we slice it, we lack jurisdiction over this cross-appeal as well. If it was properly docketed inside the Kalmans Appeal (and the Schoenemans never made any attempt to correct that docketing), then it was not timely filed. It was filed on February 14, twelve days after the Kalmans' February 2 notice of appeal, not the required ten. Ill. S. Ct. R. 303(a)(3) (eff. July 1, 2017). Nor did a weekend intervene; their notice of appeal was filed on Wednesday, February 14; the tenth day would have been Monday, February 12.

¶ 55    And of course, even if the Schoenemans were to ask us to consider their cross-appeal to have been filed under the Classic Appeal—where it would have been timely filed—we no longer have jurisdiction over the Classic Appeal; it has long been dismissed. So the Schoenemans do not have an appeal before us, either.

¶ 56    These appellate rules can be tricky, particularly for those unaccustomed to navigating these murky waters. But however sympathetic we may be, jurisdictional defects are the one thing

the appellate court cannot forgive. Both of Classic's appeals have already been long dismissed. We dismiss the Schoenemans' untimely cross-appeal for lack of jurisdiction. We have jurisdiction only over the Kalmans Appeal.

¶ 57                                    II. The Kalmans Appeal

¶ 58     On appeal, the Kalmans raise several errors that fall into three basic categories: (1) errors in the trial court's judgment; (2) the refusal to grant the Kalmans a continuance after the death of their expert; and (3) the denial of a jury trial. We take them in that order.

¶ 59                                    A. Trial Judgment

¶ 60     The Kalmans challenge the trial court's judgment in various respects. Specifically, they claim the trial court erred in: (1) failing to find that ASCI breached its contract; (2) failing to award sufficient damages for declaratory relief against both ASCI and Classic; (3) failing to hold Classic liable under the Consumer Fraud Act; and (4) failing to find both ASCI and Classic liable for common-law fraud.

¶ 61     Looming large over this appeal generally, and these fact-based arguments specifically, is the fundamental problem that we lack transcripts of proceedings for most of the trial. As noted, the only transcript in the record is from the third and final day of trial on August 30. Obviously, that transcript does not encompass all the trial evidence. It contains the testimony of four witnesses (one of which is only partial testimony, continued from the previous day), closing arguments, and the court's oral ruling. Nor have the Kalmans provided us with a suitable substitute for a transcript, such as a bystander's report or agreed statement of facts. See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017).

¶ 62     It is a bedrock principle that the appellant "has the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error, and, in the absence of such

a record on appeal, the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003); see *Webster v. Hartman,* 195 Ill. 2d 426, 433 (2001); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "In civil litigation, a party who might seek appellate review should preserve a complete record because, absent such a record, we must presume that the trial court's judgment was correct." *Doe v. Parrillo*, 2021 IL 126577, ¶ 67.

¶ 63    When, as here, an appellant challenges the court's factual findings or its take on the sufficiency of the proof, we ask whether the court's findings were against the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 20; *Best v. Best*, 223 Ill. 2d 342, 348-49 (2006). That analysis obviously requires us to review the testimony and other evidence and compare it against the trial court's evaluation of that evidence.

¶ 64    Just as obviously, the absence of a transcript prevents us from conducting a meaningful manifest-weight review of the testimony, thus requiring us to presume the trial court's ruling had a sufficient basis in law and fact. See *Webster*, 195 Ill. 2d at 433-34; *Hye Ra Han v. Holloway*, 408 Ill. App. 3d 387, 390 (2011); *Huber v. Pointer*, 2026 IL App (1st) 250746-U, ¶ 17; *832 Oakdale Condominium Ass'n v. McBride*, 2025 IL App (1st) 240834-U, ¶ 47; *Moscov v. Addo*, 2023 IL App (1st) 220619-U, ¶ 26; *O'Malley v. Udo*, 2022 IL App (1st) 200007, ¶ 60.

¶ 65    The Kalmans' arguments in their brief highlight this very problem. To support their argument that the court erred in finding that they failed to prove their claims, the Kalmans cite their amended complaint, deposition testimony, affidavits, reports, and often nothing at all. Reading their brief, one might be tempted to think that this case never went to trial.

¶ 66    For example, in claiming the trial court erred in finding a lack of damages against ASCI, the Kalmans cite the allegations of their amended complaint, as if that pleading had any

relevance after a trial on the merits. In their argument that they proved their claim against ASCI, the Kalmans cite to testimony from a discovery deposition. To support their claim that the trial court erred in failing to enter a declaratory judgment against Classic, the Kalmans cite a letter from a loan originator attached to an affidavit from an opinion witness.

¶ 67     In arguing that the court erred in rejecting their consumer-fraud claim, the Kalmans write that Classic's expert "admitted in his testimony" (1) "that Classic failed to act as a General Contractor on this project," (2) "that a General Contractor is supposed to perform at least 30% of the physical work on the job," (3) "that 'substantial completion' is an industry standard and must be considered to be at least 98% completed," and (4) "that if the project was 90% completed or less *** than [*sic*] the project would never be considered " 'substantially completed.' "

¶ 68     But they cite no transcript or anything in the record for this testimony. Did the expert make those admissions at trial? In a discovery deposition? An affidavit? Whatever the answer, if we cannot read it for ourselves, we are in no position to credit that testimony, much less weigh it against other testimony and evidence.

¶ 69     In claiming the court erred in finding Classic liable for breach of contract, the Kalmans cite nothing in the record as they lay out presumed fact after presumed fact about Classic's allegedly shoddy workmanship. Their only citation is to the statement of facts, which *itself* cites the original complaint and a report from their deceased expert to support this claim. How much, if any, of this made its way into trial testimony or evidence remains a mystery.

¶ 70     We could go on, but these examples suffice. Indeed, the lack of record evidence reveals itself as well in the lack of citations to the record in the Kalmans' statement of facts—so much so that defendants urge us to strike the brief for noncompliance with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), which requires citation to the pages of the record on appeal. We

will not strike the brief, but it only underscores that we are in no position to second-guess the trial court's take on the testimony and evidence when we cannot review it ourselves.

¶ 71    Absent a transcript or acceptable substitute, we presume that the experienced trial judge's final judgment after trial conformed with the law and facts. We uphold those findings.

¶ 72                              B. Denial of Continuance

¶ 73    The Kalmans next claim the court erred in denying them a continuance of the trial after their expert died. The grant of a continuance lies in the court's discretion. *Doe v. Parrillo*, 2021 IL 126577, ¶ 65; *People v. Walker*, 232 Ill. 2d 113, 125 (2009); *In re Z.I.*, 2026 IL App (1st) 250207, ¶ 52; *In re D.M.*, 2020 IL App (1st) 200103, ¶ 20; *Andersonville South Condominium Ass'n v. Federal National Mortgage Co.*, 2017 IL App (1st) 161875, ¶ 28; *Southwestern Illinois Development Authority v. Masjid Al-Muhajirum*, 348 Ill. App. 3d 398, 402 (2004).

¶ 74    But here again, the absence of a transcript of the trial court's oral ruling denying the continuance hinders our review. When the appellant claims the trial court erred in a ruling committed to its sound discretion, the absence of a transcript precludes us from hearing the court's reasoning and thus from determining whether the trial court abused its discretion. See, *e.g.*, *Foutch*, 99 Ill. 2d at 391-92; *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 56; *In re Marriage of Keegan & Papin*, 2022 IL App (2d) 190495, ¶ 42; *Vines v. Fiorenzo*, 2021 IL App (1st) 200548-U, ¶ 33; *Door Properties, LLC v. Nahlawi*, 2021 IL App (1st) 182568-U, ¶ 56.

¶ 75    More specifically here, we have declined to review the denial of a motion for continuance without a transcript explaining the trial court's reasoning. See *Moscov*, 2023 IL App (1st) 220619-U, ¶ 21 ("where there is no transcript of the trial court's denial of [defendant's] request to postpone trial, 'there is no basis for holding that the trial court abused [its] discretion in

- 16 -

denying the motion.' ") (quoting *Foutch*, 99 Ill. 2d at 392); *In re Marriage of Geiser*, 2021 IL App (4th) 200294-U, ¶ 30 ("Without a sufficient record from that [pretrial] conference, we cannot say the trial court's denial [of a continuance] was an abuse of discretion.").

¶ 76    Nor, without a transcript of the trial proceedings, can we determine whether the Kalmans suffered any prejudice from the failure to grant a continuance. *In re A.F.*, 2012 IL App (2d) 111079, ¶ 36 ("the denial of a request for a continuance is not a ground for reversal unless the complaining party has been prejudiced by the denial."); *DeBow v. City of East St. Louis*, 158 Ill. App. 3d 27, 38 (1987) (same); *Marriage of Geiser*, 2021 IL App (4th) 200294-U, ¶ 26 (same).

¶ 77    While the Kalmans argue that the new expert was merely "a stand-in" that "could not replace Fried's extensive testimony on such short notice," we have no basis to evaluate that claim. We do not know, for example, how competently and persuasively the new expert testified. We do not know if the Kalmans were permitted to admit the deposition testimony of their deceased expert into evidence as they requested. So even if, without any hint of the trial court's reasoning, we were able to find error in the refusal to grant a continuance, we would have no basis for determining that this error was sufficiently prejudicial to warrant a new trial.

¶ 78    So, we have no basis to find an abuse of discretion, much less prejudicial error.

¶ 79    We do, however, discern one legal argument on this point. The Kalmans claim that their emergency motion for continuance should have been granted under Illinois Supreme Court Rule 218(c) (eff. Feb. 2, 2023), which provides that:

> "All dates set for the disclosure of witnesses, including rebuttal witnesses, and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates that trial will commence, unless otherwise agreed by the parties. This rule is to be liberally

construed to do substantial justice between and among the parties." Ill. S. Ct. R. 218(c) (eff. Feb. 2, 2023).

¶ 80    The committee comments explain that this 60-day requirement means, "[f]or example, opinion witnesses should be disclosed, and their opinions set forth pursuant to interrogatory answer, at such time or times as will permit their depositions to be taken more than 60 days before trial." Ill. S. Ct. R. 218, Committee Comments (rev. June 1, 1995). From this, the Kalmans argue that the court was under a legal obligation to continue the trial because it was impossible for them to complete the discovery for a new expert within 60 days of trial.

¶ 81    But this 60-day timeframe is merely the default rule that applies in the absence of other deadlines set by the court and is not intended to tie the circuit court's hands. *Frulla v. Hyatt Corporation*, 2018 IL App (1st) 172329, ¶ 25. The failure to follow the 60-day time limit does not automatically require the circuit court to bar a witness (*id*. ¶ 26), nor would it automatically require the court to continue the trial date. The circuit court retains broad discretion in matters of discovery, docket management, and scheduling, independent of any rule or statute. *Panos Trading LLC v. Forrer*, 2023 IL App (1st) 220451, ¶ 38; *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 24; *In re Parentage of L.H.*, 2026 IL App (2d) 250354-U, ¶ 67.

¶ 82    So to the extent the Kalmans claim *legal* error here, they are mistaken. And as already explained, we are unable to review the trial court's ruling for an abuse of discretion. We thus reject this claim of error as well.

¶ 83                                    C. Denial of Jury Trial

¶ 84    As their last attempt to reverse the trial judgment outright, the Kalmans claim the court erred by refusing to grant them a jury trial. Recall that, shortly before trial, defendants filed a motion to "confirm" the case was proceeding as a bench trial. The motion argued several

- 18 -

procedural bases for the court to ignore the Kalmans' 2021 jury demand. For one, they said, the Kalmans waived a jury by failing to include a jury demand in their original answer and counterclaims. See 735 ILCS 5/2-1105 (West 2022). They also argued that the Kalmans failed to seek leave to file an untimely jury demand under Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011). Without elaboration, the court granted defendants' motion.

¶ 85    In their opening brief, the Kalmans claim the "trial court erred in converting the trial from a jury trial to a bench trial by overruling the court's prior order without briefing and on the eve of Trial." But they cite absolutely no law to support this contention. Likewise, they state that "[t]his abrupt change was prejudicial to Kalman" without any elaboration. Their entire appellate argument consists of less than a page and contains no citation to case law. Nor do the Kalmans attempt to address the arguments raised by defendants below in opposition to their jury demand.

¶ 86    Our supreme court rules obligate an appellant to present appropriate argument and citation to relevant case law. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). This court is "not a repository for an appellant to foist the burden of argument and research." *Graham v. Lakeview Pantry*, 2019 IL App (1st) 182003, ¶ 26. By utterly failing to support their argument on this point, the Kalmans have forfeited review of the issue. *Id*.

¶ 87                                D. Remaining Issues on Appeal

¶ 88    Beyond their attempts to overturn the court's judgment, the Kalmans raise a number of issues related to fees and costs, many of which were raised in their post-trial motion.

¶ 89                                1. "Prevailing Party" Fees and Costs

¶ 90    The Kalmans argue that they are entitled to statutory costs and contractual fees and costs as the "prevailing party" in the lawsuit. They claim they were "the sole prevailing party, and [their] counsel obtained excellent results."

¶ 91 As for a contractual right to fees, "if both parties win and lose on different claims, it may be inappropriate to find either one to be the prevailing party." *Pepper Construction Company v. Palmolive Tower Condominiums, LLC*, 2024 IL App (1st) 221319, ¶ 22. In that context, it is within the court's discretion to award fees and costs. *Id.* ¶ 23.

¶ 92 Statutorily, a prevailing plaintiff is entitled to costs. See 735 ILCS 5/5-108 (West 2024). It also provides, however, that when there are several counts and the defendant prevails on *any* of them, "costs shall be awarded in the discretion of the court." *Id.* § 5-112. That remains true even if the defendant only prevails on the specific *relief* requested within a single count. See *Rauwolf v. Travelers Indemnity Co.*, 20 Ill. App. 3d 226, 230 (1974) (court decision to split costs was appropriate, as "plaintiff prevailed upon his claim for compensatory damages, but defendant prevailed upon the claim for punitive damages.")

¶ 93 The circuit court here clearly did not believe *any* party was the "prevailing party," as it denied all requests for fees and costs. That was a reasonable conclusion. The Kalmans prevailed on part of one count and lost on everything else; they obtained a small monetary judgment but vastly less than they sought. Defendants successfully defended multiple claims but lost on their counterclaims. At the end of the day, no party clearly won. Based on the record and argument available, we have no basis to find that the court abused its discretion in refusing to award the Kalmans fees and costs.

¶ 94 2. Mechanic's Lien Fees and Costs

¶ 95 The Kalmans also claim they are entitled to fees under the Mechanic's Lien Act, 770 ILCS 60/17 (West 2024), because "the court already determined that the mechanic's lien was filed 'without just cause or right.' " The Mechanic's Lien Act allows a court to tax attorney fees and costs if it concludes that the lien was "not well grounded in fact and warranted by existing

law or a good faith argument for the extension, modification, or reversal of existing law." *Id*. § 17(c), (d). While the Kalmans claim the court made that finding, they cite nothing in the record to support that conclusion. They appear to suggest that the finding was *implied* when the court determined that the lien was "void as a matter of law."

¶ 96     For one, we can't even verify if that's why the court dismissed the lien—another transcript we lack—but more to the point, even if that is true, that is a very different finding than the one required to trigger fees under the Mechanic's Lien Act. It is entirely plausible—likely, even—that the mechanics' lien was only *technically* void and was otherwise "well grounded in fact and warranted by existing law." See *id.* We find no basis to overturn the court's ruling.

¶ 97                                3. Prejudgment Interest

¶ 98     Next, the Kalmans seek prejudgment interest from defendants on the amount Erie placed in escrow. Generally speaking, under the Interest Act, a party is entitled to prejudgment interest for all monies due on a written instrument. See 815 ILCS 205/2 (West 2024). Additionally, the statute allows interest "on money withheld by an unreasonable and vexatious delay of payment." *Id*. The Kalmans claim the insurance proceeds were based on a written insurance contract and were unreasonably withheld due to defendants' conduct.

¶ 99     The problem is that the insurance contract—the written instrument on which they are basing this claim for relief—wasn't with the parties from whom they are seeking to collect interest. Nor was it *defendants*' choice to put the money in escrow; that was Erie's decision. The Kalmans make no attempt to explain how the law allows them to recover prejudgment interest against defendants who were (1) not a party to the "written instrument" and (2) not the cause of the money being placed in escrow.

¶ 100    The Kalmans also claim they're entitled to interest on the approximately $11,000 judgment in their favor. But that judgment was for the *return* of money that the Kalmans paid pursuant to a legally void contract. Nowhere in that contract were the *Kalmans* entitled to a payment of any kind. The Interest Act only applies when the amount due and the time for payment are clearly established within the written instrument. *Chandra v. Chandra*, 2016 IL App (1st) 143858, ¶ 50.

¶ 101    The Kalmans argue their *right* to that money became clearly established when the Department of Insurance "required Schoeneman to return all fees to Plaintiffs." First of all, the department did not say it was *requiring* the return of fees, only that ASCI *should* return the fees. And in any event, that is a very long distance from a written instrument clearly establishing a right to payment. Nothing in the contract gave the Kalmans a right to any payment whatsoever, and nothing in their brief convinces us that the Act applies to this judgment.

¶ 102                                    4. Rule 137 Sanctions

¶ 103    Finally, the Kalmans claim the court erred in refusing to grant Rule 137 sanctions against ASCI. In their motion for post-trial relief, the Kalmans argue the court should impose sanctions on the basis that, for years, ASCI "lied" about whether they received a fee.

¶ 104    From our review of the record, the Kalmans overstate their case. ASCI consistently took the position that it did *not* collect an adjuster fee for the construction repair (because it was using an affiliate, Classic, to perform the work) but did collect a fee for adjusting the Kalmans' claims for personal property. Indeed, the trial court recognized that ASCI only collected a fee of approximately $11,000 related to the personal property claim, instead of the "full" fee of $27,000 that plaintiffs sought to recover.

¶ 105   Rule 137 sanctions are "designed to discourage frivolous filings, not to punish parties for making losing arguments." *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 15.  "The decision whether to impose sanctions under Rule 137 is committed to the sound discretion of the circuit judge." *Dowd & Dowd, Limited v. Gleason*, 181 Ill. 2d 460, 487 (1998). Indeed, even if the court finds that a party violated Rule 137, the court is "not required" to enter sanctions. *Arnold*, 2015 IL 118110, ¶ 15.

¶ 106   While ASCI resisted returning the fee throughout the litigation, nothing in the record suggests that this position was so woefully unsupported by law or fact as to warrant sanctions. To put it simply: ASCI merely lost that argument at trial. The court was well within its discretion to deny Rule 137 sanctions here.

¶ 107                              CONCLUSION

¶ 108   We dismiss the Schoenemans' cross-appeal. We otherwise affirm the judgment in all respects.

¶ 109   Cross-appeal dismissed; judgment affirmed.